Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Deborah De Villa (SBN 312564)
*ddevilla@ahdootwolfson.com*
Yufei Wang (SBN 346170)
*ywang@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone: 310.474.9111
Facsimile: 310.474.8585

Patrice L. Bishop (SBN 182256)
pbishop@aftlaw.com
ABRAHAM, FRUCHTER
& TWERSKY, LLP
9440 Santa Monica Blvd.
Bank of America Building
Suite 301,
Beverly Hills, CA 90210
Telephone: 310.279.5125
Facsimile: 212.279.3655

*Attorneys for Plaintiffs and the Proposed Class*

[Additional Counsel Appear on the Signature Page]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE AMERICAN HONDA FRONT CAMERA LITIGATION | Master File No. 2:26-cv-6222-SPG-MAR<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Hon. Sherilyn Peace Garnett<br><br>ACTION SEEKING STATEWIDE AND/OR NATIONWIDE RELIEF<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Keyana Jones, Lena Dubrovsky-Fishman, Benjamin Demarest, Weihsuan Lai, Marianne Gonzales, Jesse Link, Omar Awan, Olga Good, Beverly Mason, and Jonah Morningstar ("Plaintiffs"), individually and on behalf of all other similarly situated individuals, bring this Consolidated Class Action against Defendant American Honda Motor Co., Inc. ("Honda" or "American Honda" or "Defendant"), and allege upon personal knowledge as to their own actions and their counsel's investigation, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1. Plaintiffs bring this action individually and on behalf of all similarly situated purchasers and lessees of certain Honda Clarity, Civic, HR-V, Odyssey, and Pilot vehicles equipped with Honda Sensing®, Honda's proprietary suite of advanced driver-assistance technologies (collectively, the "Vehicles" or "Class Vehicles").[1]

2. Defendant Honda maintains its United States sales and marketing headquarters in Torrance, California.[2] From that headquarters, Honda directs marketing, sales, service, parts distribution, warranty administration, and related operations for Honda-brand vehicles in the United States.[3] Honda sold and marketed the Class Vehicles as equipped with advanced safety technologies

---

[1] Specifically, this action concerns the following Honda vehicles: the model year 2018-2025 Honda Odyssey, the model year 2018-2025 Honda Pilot, the model year 2018-2025 Honda Civic, the model year 2023-2025 Honda HR-V, the model year 2022-2025 Honda CR-V and the model year 2018-2021 Honda Clarity Plug-In Hybrid. Plaintiffs reserve the right to amend the definition of the Vehicles after conducting discovery.

[2] American Honda Motor Co., Inc., *Honda Operations and Locations*, Honda, https://www.honda.com/operations (last visited July 15, 2026).

[3] *See* American Honda Motor Co., Inc., *About Us*, Honda, https://www.honda.com/about (last visited July 15, 2026); American Honda Motor Co., Inc., *Honda Operations and Locations*, *supra* note 2.

designed to help drivers recognize roadway hazards, avoid or mitigate collisions, maintain lane position, and safely operate their vehicles. Central to those representations was Honda Sensing®, an integrated suite of standard or available driver-assistance technologies that relies on a windshield-mounted front sensor camera.

3. Honda Sensing® features include: forward collision warning and automatic emergency braking; lane departure warning and lane-keeping assist; the brake hold system, which keeps the vehicle stationary on inclines; the collision mitigation system (which detects potential forward collisions and can automatically apply the brakes); the road departure mitigation system (which warns the driver or corrects vehicle trajectory when lane departures are detected); adaptive cruise control (which automatically adjusts speed to maintain a safe distance from other vehicles); the electric parking brake (which securely holds the vehicle when parked); and a braking system designed to provide reliable stopping power under normal driving conditions. The conventional cruise control feature is integrated with, and dependent on, the adaptive cruise control feature.

4. All of these features are dependent on normal functioning of the vehicle's front-facing sensor camera ("Front Sensor Camera"). Depending on the particular model and model year, Honda Sensing® uses the Front Sensor Camera alone or together with a separately located millimeter-wave radar sensor to detect vehicles, pedestrians, lane markings, roadway boundaries, traffic signs, and other conditions in front of the vehicle.[4]

5. However, when the Front Sensor Camera stops functioning, it causes total collapse of the Honda Sensing system and all dependent safety features (including the conventional cruise control feature) to fail simultaneously. Warning

---

[4] Honda Motor Co., Ltd., Honda SENSING, Honda Global, https://global.honda/en/tech/Safety_and_driver_assistive_technologies_Honda_SENSING/ (last visited July 15, 2026).

lights persistently reappear when the systems are inoperable and do not resolve on their own, forcing the driver to continue operating the vehicle with constant system alerts and failed safety features (the "Defect").

6. As alleged herein, the Class Vehicles which Defendant manufactured, marketed, and distributed contain the common and latent Defect which Defendant failed to disclose.

7. The Defect manifests during ordinary vehicle operation without misuse, abuse, collision damage, neglect, or improper maintenance. Owners experiencing the Defect commonly receive numerous simultaneous warning messages that appear suddenly, indicating that multiple Honda Sensing® features have become unavailable or are operating abnormally. As a result, owners lose the benefit of the advanced safety technologies Honda represented repeatedly would improve driver awareness, assist with collision avoidance, maintain lane position, and enhance overall vehicle safety.

8. Repairing the Defect by Defendant requires extensive diagnostic procedures, replacement of the Front Sensor Camera, software programming, aiming, calibration, and related labor, resulting in substantial out-of-pocket expenses for consumers. Even after undergoing repairs, owners remain at risk of recurring failures and additional repair costs because Honda has failed to provide an effective permanent remedy for the Defect.

9. Honda knew or should have known of the Defect through its design and validation testing, authorized-dealer repair network, warranty and replacement-part data, technical-assistance requests, diagnostic information, customer complaints, customer complaints to National Highway Traffic Safety Administration ("NHTSA") and post-sale monitoring. Honda nevertheless continued selling the Class Vehicles without disclosing the Defect or providing an adequate remedy. This knowledge by Honda is demonstrated, as set for the below, in the Class Vehicles' manuals, customers' and potential class members public

complaints to NHTSA, and will upon information and belief, be further supported and demonstrated by customer complaints about the Defect to Honda dealers and to Honda directly, which will be obtained through discovery.

10. Plaintiffs typically experienced the Defect when their Vehicles began displaying numerous Honda Sensing® warning messages affecting multiple driver-assistance technologies. Many of the Plaintiffs ultimately incurred monetary damages by having to pay diagnostic fees and repair expenses, in many cases amounting to thousands of dollars for each Plaintiff. Had Honda disclosed that the Front Sensor Camera could prematurely fail, disable multiple standard driver-assistance functions, and require costly repairs, Plaintiffs would not have purchased their Vehicles or would have paid substantially less for them.

11. Through the conduct alleged herein, Honda concealed and omitted material facts concerning the Defect, breached its express and implied warranties, violated applicable consumer protection laws, and was unjustly enriched at the expense of Plaintiffs and Class Members.

12. Despite growing reports of these safety system failures, Honda has not issued a recall related to the Defect. Honda has failed and refused to provide compensation to many owners, who report having to pay out of pocket for diagnostics or repairs, and has not provided customers with adequate free repair or replacement options

13. Plaintiffs therefore bring this action individually and on behalf of the proposed Class to recover all damages, restitution, declaratory relief, injunctive relief, attorneys' fees, costs, and all other relief authorized by law.

## PARTIES

**Plaintiffs**

14. Plaintiff Lena Dubrovsky-Fishman is a citizen of California who purchased a 2021 Honda Pilot from an authorized Honda dealer in California on March 27, 2024, for personal, family and household use and not for resale and has

owned the Vehicle continuously. Plaintiff purchased her vehicle reasonably believing that it was free from material defects and would provide the safety, reliability, quality, and performance throughout its useful life that Honda represented.

15. Plaintiff Keyana Jones is a citizen of Washington state who purchased a 2025 Honda Civic Hybrid Sport Touring from an authorized Honda dealer in Washington on July 10, 2025, for personal, family and household use and not for resale and has owned the Vehicle continuously. Plaintiff purchased her vehicle reasonably believing that it was free from material defects and would provide the safety, reliability, quality, and performance throughout its useful life that Honda represented.

16. Plaintiff Jesse Link purchased a new 2019 Honda Odyssey from an authorized Honda dealer in California on March 22, 2019, for personal, family and household use and not for resale and has owned the Vehicle continuously. Plaintiff purchased his vehicle reasonably believing that it was free from material defects and would provide the safety, reliability, quality, and performance throughout its useful life that Honda represented.

17. Plaintiff Benjamin Demarest is a citizen of California who purchased a 2020 Honda Clarity from an authorized Honda dealer in California on December 26, 2020, for personal, family and household use and not for resale and has owned the Vehicle continuously. Plaintiff purchased his vehicle reasonably believing that it was free from material defects and would provide the safety, reliability, quality, and performance throughout its useful life that Honda represented.

18. Plaintiff Weihsuan Lai is a resident of California who initially leased a new Honda HR-V on May 7, 2019, in California from Honda San Francisco and later purchased that vehicle off the lease on April 13, 2022. Plaintiff leased and subsequently purchased her Vehicle for personal, family and household use and not for resale and has owned the Vehicle continuously. Plaintiff purchased her

vehicle reasonably believing that it was free from material defects and would provide the safety, reliability, quality, and performance throughout its useful life as Honda represented.

19. Plaintiff Marianne Gonzales is a resident of Florida who bought a new 2019 Honda Pilot from an authorized Honda dealer in Florida on May 6, 2019, for personal, family and household use and not for resale and has owned the Vehicle continuously. Plaintiff purchased her vehicle reasonably believing that it was free from material defects and would provide the safety, reliability, quality, and performance throughout its useful life that Honda represented.

20. Plaintiff Olga Good purchased a new 2022 Honda Pilot from an authorized Honda dealer in Maryland on April 13, 2022, for personal, family and household use and not for resale and has owned the Vehicle continuously. Plaintiff purchased her vehicle reasonably believing that it was free from material defects and would provide the safety, reliability, quality, and performance throughout its useful life that Honda represented.

21. Plaintiff Jonah Morningstar is a resident of Oregon who purchased a preowned 2019 Honda Clarity in Oregon on April 11, 2024, for personal, family and household use and not for resale and has owned the Vehicle continuously. Plaintiff purchased his vehicle reasonably believing that it was free from material defects and would provide the safety, reliability, quality, and performance throughout its useful life that Honda represented.

22. Plaintiff Omar Awan is a citizen of the Commonwealth of Virginia who purchased a 2019 Honda Odyssey on October 14, 2020, from Carvana. He took possession of the vehicle in Maryland. He purchased the Vehicle for personal, family and household use and not for resale and has owned the Vehicle continuously. Plaintiff purchased his vehicle reasonably believing that it was free from material defects and would provide the safety, reliability, quality, and performance throughout its useful life that Honda represented.

23. Plaintiff Beverly Mason is a citizen of the Commonwealth of Virginia who purchased a 2018 Honda Clarity Plug-In Hybrid in 2019 from an authorized Honda dealer in Virginia for personal, family, and household use, not for resale, and has owned the Vehicle continuously. Plaintiff purchased her Vehicle reasonably believing it was free from material defects and would provide the safety, reliability, quality, and performance Honda represented throughout its ordinary useful life.

24. Honda did not disclose, and Plaintiffs did not know, that the Vehicles' Front Sensor Camera was susceptible to premature malfunction, with the automatic result of disabling multiple Honda Sensing® functions and requiring substantial out-of-pocket repair expenses as well as diminution of the value of their Vehicles.

25. Plaintiffs continue to own and regularly operate the Vehicles, including commuting to work, although all of them and remain concerned that the Defect renders their Vehicles unsafe or, to the extent the Defect has become latent, may recur. Had Honda disclosed the Defect, Plaintiffs would not have purchased or leased their Vehicle or would have paid substantially less for it.

**Defendant American Honda Motor Co., Inc.**

26. Defendant Honda is a California corporation with its principal place of business at 1919 Torrance Boulevard, Torrance, California 90501.

27. At all relevant times, Honda designed, engineered, tested, manufactured, marketed, distributed, warranted, sold, leased, and serviced the Class Vehicles. Honda also developed, approved, and disseminated the advertising, marketing materials, warranty information, owner's manuals, technical publications, dealership communications, and customer-service policies concerning the Class Vehicles and Honda Sensing®.

28. Upon information and belief, Honda exercised substantial control over the design, testing, validation, marketing, distribution, warranty administration, technical support, and post-sale handling of the Class Vehicles and

the Defect. Honda further exercised control over its authorized dealer network with respect to warranty repairs, diagnostic procedures, technical guidance, replacement parts, software updates, programming, calibration procedures, and customer communications relating to the Defect.

29. American Honda Motor Co., Inc. assumes responsibility for the defects in the Class Vehicles as American Honda implements Japanese designs in the U.S. market by marketing, distributing, warranting, and servicing the vehicles, such that American Honda Motor Co. participates in and benefits from the sale of the defective Class Vehicles and the misrepresentations and material omissions that led consumers to purchase them.

30. Honda has derived substantial revenues from the sale and lease of the Class Vehicles throughout the United States including revenues from the sale of replacement parts and the administration of repair procedures associated with the Defect.

31. Defendant developed and disseminated the owners' manuals, warranty booklets, product brochures, and advertisements and other promotional materials for the Class Vehicles with the intent that such documents should be purposefully distributed throughout all fifty states. Defendant is engaged in interstate commerce, selling vehicles through its network in every state of the United States.

32. Whenever reference is made in this Complaint to any act, omission, policy, practice, or representation of Honda, such allegation includes the acts of Honda's officers, directors, employees, agents, representatives, subsidiaries, affiliates, divisions, predecessors, successors, authorized dealerships acting within the scope of their authority, and all other persons acting on Honda's behalf or under its direction.

## JURISDICTION AND VENUE

33. This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, the proposed Class consists of more than 100 members, and at least one member of the proposed Class is a citizen of a state different from Honda.

34. This Court has personal jurisdiction over Honda because Honda is incorporated in California, maintains its principal place of business in California, regularly conducts substantial business throughout California, designed, marketed, distributed, warranted, and sold the Vehicles in California, and purposefully availed itself of the privilege of conducting business within this State. Honda's contacts with California are continuous, systematic, and directly related to the claims alleged herein.

35. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Honda resides in this District for venue purposes, maintains substantial operations in this District, and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

36. Honda derives substantial revenue from the sale and lease of the Vehicles throughout California and this District and has purposefully directed the conduct alleged herein toward consumers in California. The claims asserted in this action arise directly from Honda's conduct within and directed toward this District.

## FACTUAL ALLEGATIONS

### A. The Class Vehicles Contain a Defective Front Sensor Camera System

37. The Class Vehicles contain the common and latent Defect affecting the forward-facing Front Sensor Camera and the components necessary for its proper operation. The Defect causes the Front Sensor Camera to prematurely malfunction, intermittently fail, or cease functioning during ordinary and

foreseeable vehicle operation.

38. The Front Sensor Camera is a principal component of Honda Sensing®, Honda's integrated suite of active-safety and driver-assistance technologies. Depending on the particular model and model year, Honda Sensing® uses the Front Sensor Camera alone or together with a separately located millimeter-wave radar sensor to detect vehicles, pedestrians, lane markings, roadway boundaries, traffic signs, and other conditions in front of the vehicle.[5]

39. Honda's own technical materials confirm that the camera and radar are distinct sensors. The camera is mounted to the interior side of the windshield behind the rearview mirror, while the radar sensor is located in the grille, bumper, or another forward exterior location depending on the vehicle.[6]

40. Honda designed numerous Honda Sensing® functions to depend on environmental information generated by the Front Sensor Camera. Honda's 2018 Clarity Plug-In Hybrid Owner's Manual, for example, expressly states that the camera is used by RDM, LKAS, ACC with Low-Speed Follow, and CMBS and is designed to detect objects that trigger those systems to operate.[7] The owner manuals for the 2019 Honda Odyssey and Honda Pilot expressly state the same.[8]

---

[5] Honda Motor Co., Ltd., *Honda SENSING*, Honda Global, https://global.honda/en/tech/Safety_and_driver_assistive_technologies_Honda_SENSING/ (last visited July 15, 2026).

[6] American Honda Motor Co., Inc., *2018 Clarity Plug-In Hybrid Owner's Manual* 394 (2017), https://techinfo.honda.com/rjanisis/pubs/OM/AH/ATRW1818OM/enu/ATRW1818OM.PDF; Honda Motor Co., Ltd., *supra* note 4.

[7] American Honda Motor Co., Inc., *2018 Clarity Plug-In Hybrid Owner's Manual*, *supra* note 6, at 394. The manual expressly identifies LKAS, RDM, ACC with Low-Speed Follow, and CMBS as systems using the camera.

[8] American Honda Motor Co., Inc., *2019 Odyssey Owner's Manual*, p. 27 (2018), https://manuals.startmycar.com/published/Honda-Odyssey_2019_EN-US_US_8c16f69281.pdf; American Honda Motor Co., Inc., *2019 Pilot Owner's*

41. Honda similarly explains that LKAS uses the camera to monitor lane lines and apply steering input to help keep the vehicle between detected lane markings.[9] Honda instructs owners that ACC and CMBS also use the camera and directs owners to the common "Front Sensor Camera" section when describing the operating conditions and limitations of those systems.[10]

42. Because multiple functions use a common camera, failure of the camera does not merely eliminate one isolated convenience feature. When the Defect manifests, multiple separately advertised safety and driver-assistance functions (including the conventional cruise control feature) automatically and simultaneously become unavailable, display warnings, or operate abnormally.

43. Owners experiencing the Defect commonly receive contemporaneous warnings relating to CMBS, ACC, LKAS, RDM, Forward Collision Warning, Lane Departure Warning, Traffic Sign Recognition where equipped, and other camera-dependent Honda Sensing® functions.

44. The particular combination and wording of the warnings varies by model, model year, equipment, and instrument-panel configuration. Those variations do not alter the common nature of the Defect because the affected functions depend on information supplied by the same Front Sensor Camera.

45. In some instances, owners may also receive contemporaneous warnings relating to ABS, VSA, electric power steering, or other electronic systems. Plaintiffs do not allege that the Front Sensor Camera independently performs the base functions of ABS, VSA, the airbags, or those other systems.

---

*Manual*, p. 26 (2018) https://manuals.startmycar.com/published/Honda-Pilot_2019_EN-US_US_b96b784888.pdf (last visited October 21, 2026).

[9] American Honda Motor Co., Inc., *2018 Clarity Plug-In Hybrid Owner's Manual*, *supra* note 6, at 415–20. The manual states that the front camera monitors lane lines and that LKAS applies steering torque to keep the vehicle between detected lines.

[10] *Id.* at 394, 406, 439, 443.

Instead, additional warnings may arise from the vehicle's interconnected electronic architecture or appear at the same time as the camera-dependent warnings.

46. Honda's manual itself confirms that multiple system indicators may appear together under some electronic conditions. For example, Honda states that VSA, VSA OFF, CMBS, and low-tire-pressure indicators may illuminate together when certain electronic calibration information is lost.[11] The existence of a contemporaneous warning therefore does not establish that every identified system contains an independent mechanical defect.

47. The Defect manifests during ordinary vehicle operation without misuse, abuse, collision damage, neglect, or improper maintenance by owners. The resulting warnings commonly remain active over repeated ignition cycles and require professional diagnosis rather than disappearing when temporary environmental conditions subside.

48. The Defect is distinct from temporary camera limitations caused by dirt, fog, snow, excessive heat, direct sunlight, obstructed glass, or similar external conditions. Honda's manual instructs owners to address those temporary conditions and directs them to seek dealer inspection when a camera-related message does not disappear after the windshield has been cleaned and the vehicle has been driven.[12]

49. The Defect is permanent and cannot be remedied through cleaning, recalibration, resetting the system, clearing diagnostic codes, or other temporary measures. Once the Defect manifests, attempts to clear, clean, reset, recalibrate, or otherwise service the affected Front Sensor Camera may temporarily eliminate warning messages or temporarily restore functionality, but they do not correct the underlying internal failure and the symptoms will recur. Because the Defect arises

---

[11] *Id.* at 442, 549.

[12] *Id.* at 395.

from a failure within the Front Sensor Camera unit itself, the only effective and permanent remedy is removal and replacement of the defective Front Sensor Camera with a properly functioning camera unit, or resort to independent, non-Honda authorized third party repair vendors. Accordingly, temporary measures intended merely to clear warnings or temporarily restore operation without replacing the defective Front Sensor Camera are futile and do not repair or otherwise remedy the Defect. Any safety or practicality benefits Honda claims for these driver-assist features become effectively irrelevant when the systems are inoperable, because the vehicle can no longer deliver the camera-dependent Honda Sensing® safety features. Diagnosing the Defect may require retrieval and analysis of diagnostic trouble codes, inspection of the windshield and camera mounting area, electrical testing, software testing, component testing, road testing, and efforts to distinguish a camera failure from a radar, windshield, wiring, or software condition.

50. Repairing the Defect may require replacement of the Front Sensor Camera or components necessary for its operation, software programming, aiming, calibration, and related labor.

51. Replacement or disturbance of the camera is not a plug-and-play procedure. Honda states that proper camera calibration is necessary for the system to operate properly and requires camera recalibration following windshield replacement.[13]

52. Honda's calibration requirement reflects the precision required by the camera-dependent systems. The camera must accurately determine the location of vehicles, pedestrians, lane markings, and other objects relative to the Class Vehicle before those systems can perform their intended functions.

---

[13] *Id.* at 394. Honda states: "Proper calibration of the camera is necessary for the system to operate properly."

53. Diagnosing and repairing the Defect may cost owners hundreds or thousands of dollars. Owners may incur additional costs when an initial diagnosis attributes the warnings to another component but the warnings persist until the Front Sensor Camera is replaced and calibrated.

54. Even after repair, owners remain subject to diminished value and concern that the Defect may recur because Honda has not disclosed the full nature and scope of the Defect or implemented an effective class-wide remedy.

### B. Honda Marketed the Class Vehicles as Providing Comprehensive Standard Safety Technology

55. Honda has invested substantial resources in designing, engineering, and marketing vehicle-safety technologies. Honda promotes those technologies as central to its vehicles' quality, performance, and value.

56. Honda marketed the Class Vehicles as incorporating a comprehensive package of both active and passive safety features. Honda did not present Honda Sensing® as a trivial or incidental accessory. Instead, Honda promoted the suite as a significant part of the safety functionality incorporated into the Class Vehicles.

57. Honda describes Honda Sensing® as a safety-driving-assistance system that recognizes conditions surrounding the vehicle and assists the driver with safe driving and collision avoidance.[14] Honda represents that the system uses sensor information to recognize external conditions, predict hazards, and provide driver assistance.[15]

58. Honda's marketing materials describe Honda Sensing® as an intelligent suite of safety and driver-assistance technologies designed to alert drivers to conditions they might otherwise miss. Honda prominently advertises CMBS, RDM, ACC, LKAS, and Traffic Sign Recognition as important

---

[14] Honda Motor Co., Ltd., *supra* note 4.

[15] *Id.*

components of that suite.[16] The global Honda website details the breadth that the safety functionality for this system is intended to provide.[17] Thereon, the Company describes the function of each counterpart of the system:

a. Collision Mitigation Braking System: "Applies brake pressure when an unavoidable collision is determined."

b. Road Departure Mitigation System: "Adjusts steering if you cross detected lanes without signaling."

c. Adaptive Cruise Control: "Maintains a set following interval behind detected vehicles."

d. Lane Keeping Assist System: "Adjusts steering to help you keep centered in a detected lane."

e. Traffic Sign Recognition: "Can notify drivers of posted speed limits with the use of a small camera."

59. Honda specifically marketed the Class Vehicles as being "loaded with standard safety features," including: the Advanced Compatibility Engineering™ ("ACE™") body structure; Vehicle Stability Assist™ ("VSA®"); seven airbags; and the standard Honda Sensing® suite, which Honda represented provided "exceptional driver awareness and occupant protection."[18]

---

[16] American Honda Motor Co., Inc., *Honda Sensing®*, Honda Autos, https://automobiles.honda.com/sensing (last visited July 15, 2026); American Honda Motor Co., Inc., *Honda Safety*, Honda Autos, https://automobiles.honda.com/safety (last visited July 15, 2026).

[17] *See* https://global.honda/en/tech/Omnidirectional_safety_and_driver_assistive_technologies_Honda_SENSING_360/ (last accessed on June 8, 2026.)

[18] *See*, *e.g.*, American Honda Motor Co., Inc., *Feature Highlights: 2018 Clarity Plug-In Hybrid*, Honda Information Center, https://www.hondainfocenter.com/2018/Clarity-Plug-In-Hybrid/Feature-Guide/Feature-Highlights/; American Honda Motor Co., Inc., *Feature Highlights: 2021 Pilot*, Honda Information Center, https://www.hondainfocenter.com/2021/Pilot/Feature-Guide/Feature-Highlights/; (last visited October 21, 2026); American Honda Motor Co., Inc., *Feature*

60. Honda's model-specific materials state that Honda Sensing® is standard across the Class Vehicle models.[19] The standard suite included CMBS, Forward Collision Warning, Lane Departure Warning, RDM, ACC with Low-Speed Follow, and LKAS.[20]

61. The Class Vehicles' owners' manuals similarly identify RDM, CMBS, ACC with Low-Speed Follow, and LKAS as vehicle functions and provide dedicated controls and operating instructions for those systems.[21]

62. Honda represented that CMBS could assist when a collision with a vehicle or pedestrian was possible by warning the driver and reducing vehicle speed to help minimize collision severity.[22] Honda further represented that ACC

---

*Highlights: 2019 HR-V*, Honda Information Center, https://www.hondainfocenter.com/2019/HR-V/Feature-Guide/Feature-Highlights/ (last visited October 21, 2026).

[19] *See, e.g.*, American Honda Motor Co., Inc., *Honda Sensing®: 2018 Honda Clarity Plug-In Hybrid*, Honda Information Center, https://www.hondainfocenter.com/2018/Clarity-Plug-In-Hybrid/Feature-Guide/Safety-Features/Honda-Sensing/; American Honda Motor Co., Inc., *Honda Sensing®: 2019 Odyssey*, Honda Information Center, https://www.hondainfocenter.com/2020/Odyssey/Feature-Guide/Safety-Features/Honda-Sensing/; American Honda Motor Co., Inc., *Honda Sensing®: 2021 Civic Sedan*, Honda Information Center, https://www.hondainfocenter.com/2021/Civic-Sedan/Feature-Guide/Safety-Features/Honda-Sensing/ (last visited October 21, 2026).

[20] *Id.*

[21] *See, e.g.*, American Honda Motor Co., Inc., *2018 Clarity Plug-In Hybrid Owner's Manual*, *supra* note 6, at 6–7, 394–446. The manual's visual index identifies RDM, CMBS, LKAS, and ACC controls; American Honda Motor Co., Inc., 2019 Odyssey Owner's Manual, *supra* note 8; American Honda Motor Co., Inc., 2019 Pilot Owner's Manual, *supra* note 8.

[22] American Honda Motor Co., Inc., *Collision Mitigation Braking System™ (CMBS™): 2018 Honda Clarity Plug-In Hybrid*, Honda Information Center, https://www.hondainfocenter.com/2018/Clarity-Plug-In-Hybrid/Feature-Guide/Safety-Features/Collision-Mitigation-Braking-System/ (last visited July 15,

could maintain a following interval, LKAS could provide steering assistance within a detected lane, and RDM could warn and assist the driver when the vehicle was unintentionally crossing lane markings or leaving the roadway.[23]

63. Honda's contemporaneous sales brochures promoted the Class Vehicles by representing that they include full suites of safety and driver-assistance technologies intended to assist the driver and help protect vehicle occupants.[24]

64. Honda's product materials listed the Honda Sensing® functions alongside the Clarity's other standard safety equipment, including VSA, ABS, Brake Assist, the ACE™ body structure, airbags, and occupant-restraint systems.[25] Honda thereby marketed the active and passive systems as complementary components of the Vehicle's broader safety package.

65. When the Defect disables the camera-dependent functions, owners lose a distinct and material category of safety and safety functionality that Honda represented they were purchasing.

66. Honda's representations were material. Reasonable consumers consider vehicle-safety technologies material when deciding which vehicle to purchase or lease and how much to pay.

---

2026); American Honda Motor Co., Inc., *2018 Clarity Plug-In Hybrid Owner's Manual*, *supra* note 6, at 439.

[23] American Honda Motor Co., Inc., *Honda Sensing®: 2018 Honda Clarity Plug-In Hybrid*, *supra* note 19.

[24] *See, e.g.*, American Honda Motor Co., Inc., *2018 Clarity Plug-In Hybrid* 6–7 (2017), https://www.hondainfocenter.com/-/media/Honda-Sales-Tool-Media-Folder/Images/2018-Clarity-PHEV/PDF/MY18-Clarity-Plug-In-Hybrid-Brochure.ashx.

[25] American Honda Motor Co., Inc., *2018 Honda Clarity Plug-In Hybrid Trim Walk* 1, 3 (2017), https://www.hondainfocenter.com/-/media/Honda-Sales-Tool-Media-Folder/Images/2018-Clarity-PHEV/PDF/Honda-MY18_CLARITY_Trimwalk_MECH4.ashx.

67. The United States Government Accountability Office recognizes that new vehicles are increasingly equipped with advanced driver-assistance technologies designed to prevent or mitigate crashes and support the driving task. GAO also explains that federal vehicle-safety information is intended to educate consumers and assist vehicle-purchasing decisions.[26]

68. A reasonable consumer would consider it important that a Front Sensor Camera could prematurely malfunction, disable multiple standard driver-assistance functions, and require costly diagnosis, replacement, programming, aiming, and calibration.

### C. <u>Honda's Own Materials Establish the Camera's Central Role</u>

69. Honda's technical publications establish that the Front Sensor Camera is not an incidental component. In the Class Vehicles, the camera is mounted behind the rearview mirror and is expressly used by LKAS, RDM, ACC with Low-Speed Follow, and CMBS.[27] The conventional cruise control feature is also dependent on the front camera and cannot be used at all when the camera fails.

70. Honda explains that the camera is designed to detect objects that trigger those systems to perform their functions.[28]

71. LKAS uses the Front Sensor Camera to monitor lane lines. When operating, LKAS may apply steering torque to help keep the vehicle between

---

[26] U.S. Gov't Accountability Off., GAO-24-106255, *Driver Assistance Technologies: NHTSA Should Take Action to Enhance Consumer Understanding of Capabilities and Limitations* 1, 3–5 (2024), https://www.gao.gov/assets/d24106255.pdf.

[27] *See*, *e.g.*, American Honda Motor Co., Inc., *2018 Clarity Plug-In Hybrid Owner's Manual*, *supra* note 6, at 394; American Honda Motor Co., Inc., 2019 Odyssey Owner's Manual, *supra* note 8; American Honda Motor Co., Inc., 2019 Pilot Owner's Manual, *supra* note 8.

[28] American Honda Motor Co., Inc., *2018 Clarity Plug-In Hybrid Owner's Manual*, *supra* note 6, at 394.

detected lane markings and may provide tactile and visual warnings when the vehicle drifts from the lane.[29]

72. RDM likewise depends on detection of lane markings and roadway boundaries. Honda directs owners using RDM to the manual's common front-camera handling instructions.[30]

73. ACC with Low-Speed Follow uses the vehicle's forward sensors to detect traffic ahead and maintain a selected following interval. Honda states that camera-related conditions may automatically shut off ACC or reduce its functionality and directs owners to the front-camera section of the manual.[31]

74. CMBS uses the forward sensors to detect vehicles and pedestrians in front of the vehicle. Honda's manual states that the camera used by CMBS is designed to detect pedestrians and directs owners to the front-camera section when describing CMBS operation and limitations.[32]

75. The manual further provides that CMBS may automatically shut off or lose functionality when camera-related conditions exist, including an obstructed windshield, interior windshield fog, excessive camera temperature, reflections, poor lighting, or other conditions impairing visual detection.[33]

76. Depending on the model and configuration, the Front Sensor Camera also supports Forward Collision Warning, Lane Departure Warning, Traffic Sign

---

[29] *Id.* at 415–20.

[30] *Id.* at 396–99.

[31] *Id.* at 400–09. Honda states that ACC may shut off under camera-related conditions and directs owners to the front-camera section.

[32] *Id.* at 439–46. Honda's manual describes CMBS and states that the CMBS camera is designed to detect pedestrians.

[33] *Id.* at 443–44.

Recognition, Automatic High Beam, Lead Car Departure Notification, and other driver-assistance features.[34]

77. Although Honda advertises these functions separately, they rely on overlapping information generated by the same camera. A failure of that common sensing component therefore affects multiple functions at the same time.

78. Honda's handling instructions further demonstrate the importance and sensitivity of the camera. Honda warns that film, objects, windshield damage, and even minor repairs within the camera's field of vision may cause the systems to operate abnormally.[35]

79. Honda also instructs owners not to place objects on top of the instrument panel because reflections on the windshield may interfere with detection of lane lines.[36]

80. Honda expressly states that the camera must be recalibrated following windshield replacement and that proper calibration is necessary for the system to operate properly.[37]

81. Honda's manuals also recognize that camera-related conditions may cause a message stating, "Some Driver Assist Systems Cannot Operate."[38] Depending on the condition, Honda instructs owners to cool the area around the camera, clean the windshield, drive the vehicle, or obtain inspection from an authorized Honda dealer if the message persists.[39]

---

[34] Honda Motor Co., Ltd., *supra* note 4; American Honda Motor Co., Inc., *Honda Sensing®*, *supra* note 16.

[35] American Honda Motor Co., Inc., *2018 Clarity Plug-In Hybrid Owner's Manual*, *supra* note 6, at 394.

[36] *Id.* at 395.

[37] *Id.* at 394.

[38] *Id.* at 395.

[39] *Id.*

82. These instructions establish that Honda understood that impairment of one Front Sensor Camera could render multiple driver-assistance systems unavailable.

83. Honda nevertheless failed to disclose that the Class Vehicles contained a latent defect capable of causing the camera itself, or the components necessary for its operation, to prematurely malfunction under ordinary operating conditions.

**D. <u>The Defect Causes Multiple Honda Sensing® Safety Functions to Become Unavailable</u>**

84. When the Defect manifests, owners receive clusters of warnings indicating that multiple Honda Sensing® functions are unavailable or have experienced a problem.

85. Those warnings are consistent with Honda's integrated system design. When the camera ceases to provide reliable information, the functions that depend on its input cannot operate as designed.

86. The loss of those functions deprives owners of features Honda represented would provide collision warnings, emergency braking assistance, lane-position warnings, steering assistance, road-departure assistance, and following-distance control.

87. Consumers purchased Class Vehicles equipped with functioning standard driver-assistance technologies. They did not bargain for vehicles in which several standard safety functions would prematurely become unavailable because of a latent camera defect.

88. Persistent failure of the camera is also materially different from an ordinary temporary limitation caused by rain, snow, dirt, heat, glare, or an obstructed windshield. Honda's manual identifies those temporary conditions and

instructs owners how to respond to them.[40]

89. The Defect instead causes warnings that persist after ordinary external conditions have been addressed and requires dealership diagnosis and repair.

90. Publicly available owner reports describe substantially similar manifestations in Honda vehicles equipped with materially similar Honda Sensing® architecture, including simultaneous driver-assistance warnings, continuing loss of multiple functions, camera-related diagnosis, and camera replacement or calibration.[41]

91. Notably, as described *infra*, Plaintiff Fishman was expressly informed by an authorized Honda dealership when she brought her vehicle in for inspection that the Front Sensor Camera would need to be repaired or replaced and that this was a known problem. This statement from Honda's own service representative directly aligns with the pattern of failures described herein.

92. Industry repair materials likewise explain that failure of a forward-facing Honda camera may produce a cascade of warnings affecting ACC, LKAS, CMBS, and related functions and that camera replacement requires specialized aiming or calibration.[42]

93. Those reports are consistent with Honda's own description of the

---

[40] *Id.* at 394–95, 406, 420, 443–44.

[41] *See, e.g., Honda Sensing Camera Questions*, OdyClub, https://www.odyclub.com/threads/honda-sensing-camera-questions.375884/ (last visited July 15, 2026); Post to *2016–2022 Honda Pilot Owners Group*, Facebook, https://www.facebook.com/groups/2016HondaPilot/posts/2790573361144632/ (last visited July 15, 2026).

[42] *See, e.g.,* Car ADAS Solutions, *Honda Sensing: A Guide to Honda's ADAS System and Safety Features* (Mar. 16, 2023), https://caradas.com/honda-sensing-tutorial/; Go-Parts, *Honda & Acura Camera Problems (2020–2025): Accord, Civic, Pilot & Integra* (updated June 27, 2026), https://www.go-parts.com/garage/video-camera-honda-pilot-acura-integra-honda-accord-2020-2025.

camera as a common sensor used by multiple systems. They also are consistent with Plaintiffs' experiences.

94. The owner reports and third-party materials are not the sole basis for Honda's knowledge. Honda possessed substantially more reliable information through its engineering, warranty, dealership, diagnostic, parts, customer-service, and field-monitoring systems.

95. As a direct result of the Defect, owners lose the use of material standard safety functions, incur diagnosis and repair expenses, suffer diminished vehicle value, and receive less safety-related functionality than Honda represented.

**E. <u>Honda Knew or Should Have Known of the Defect</u>**

96. Defendant knew or should have known of the Defect through surging warranty claims, National Highway Traffic Safety Administration (NHTSA) complaints, customer call logs, and national camera backorders. Likewise, Honda is no doubt aware of specialized, independent, non-Honda authorized repair services around the country which flourish because the Front Sensor Camera fails so often.

97. For example, an independent (non-Honda authorized) repair service, operating through the website www.hondacamerarepair.com, specializes in repairing failed Honda and Acura cameras. The service advertises repairs for numerous Honda and Acura vehicles manufactured between 2014 and 2024, including the Odyssey, Pilot, Fit, Passport, Civic, Accord, Clarity, CR-V, Ridgeline, HR-V, MDX, ILX, and TLX. The repair service states that "This repair is specific to fixing the U3000-49 and U-0104 codes that create all the dash warning lights."

98. The repair service attributes common failures in this generation of Honda and Acura cameras to heat-related deterioration, stating, "This generation of cameras commonly fail due to CMOS image sensor degradation caused by heat exposure over time." The service further explains, "I rebuild the lens assemblies

with added thermal protection to the inside and outside of the camera to address the root cause of the overheating issue." These statements suggest that heat-related degradation may be a recurring cause of camera failures in the affected vehicles.

99. The Defect is apparently now so commonplace among affected vehicles that a generic, "Do-it-Yourself" replacement electronic module is sold on Amazon for $113.98 or less.[43]

**a. <u>Honda's Own Internal Testing Procedures, Warranty and Repair Data, and Dealer and Supplier Reports Alerted Honda to the Defect</u>**

100. Honda knew or should have known of the Defect before Plaintiffs and Class Members purchased or leased the Class Vehicles for additional reasons.

101. Honda designed or approved the Honda Sensing® architecture, selected or approved the camera and related components, established performance requirements, and controlled system testing, validation, manufacturing, technical documentation, warranty administration, and post-sale monitoring.

102. Before releasing the Class Vehicles, Honda possessed information generated through design verification, durability testing, environmental testing, thermal testing, optical testing, software testing, calibration testing, supplier qualification, quality-control review, and pre-production vehicle evaluation.

103. Those processes evaluated whether the Front Sensor Camera and associated components could reliably function under foreseeable temperatures,

---

[43] https://a.co/d/02mUpYLi. The listing states, inter alia

About this item

- 【U3000-49 Camera Repair Module】 Designed for compatible Honda multipurpose camera systems showing U3000-49 internal electronic fault-related issues. This replacement electronic module provides a practical repair option for supported ACC and driver-assistance camera assemblies. Please diagnose the original camera system before ordering.

vibration, moisture, glare, lighting, windshield conditions, electrical conditions, and ordinary vehicle use.

104. Honda's detailed owner instructions demonstrate its knowledge of the camera's operational importance and sensitivity. Honda knew which systems used the camera, where the camera was mounted, which conditions could impair it, which warnings could result, and when recalibration was required.

105. Honda also knew that the loss of camera input could disable multiple driver-assistance safety systems at once. Honda expressly identifies LKAS, RDM, ACC, and CMBS as systems using the Front Sensor Camera.

106. After the Class Vehicles entered the market, Honda continued receiving information regarding camera failures through warranty claims, authorized-dealer repair orders, diagnostic trouble codes, Technical Assistance requests, customer contacts, replacement-camera orders, warranty parts returns, supplier communications, engineering investigations, software and calibration records, and field-performance monitoring.

107. Honda's authorized dealership network provided Honda with direct and continuing notice. Owners presenting multiple Honda Sensing® warnings were diagnosed through Honda-approved procedures and equipment, and replacement cameras and related parts were obtained through Honda's parts-distribution system.

108. Each repair order, warranty claim, technical-assistance request, replacement-camera order, programming event, and calibration procedure supplied Honda with additional information regarding the frequency, manifestations, cost, and consequences of the Defect.

109. The recurring pattern was identifiable because camera failures produced clusters of Honda Sensing® warnings and repeated camera-related diagnostic and repair activity. Honda could aggregate that information across models, model years, dealerships, part numbers, diagnostic codes, and geographic

locations.

110. Honda's own data systems further gave it access to vehicle warning and diagnostic information. For example, the 2018 Clarity Owner's Manual states that service-related devices record powertrain information to help technicians diagnose problems and that some diagnostic and maintenance information is uploaded to Honda when the vehicle starts.[44] The manual separately states that the Clarity's monitoring system transmits information including warning indicators and messages to Honda for technical diagnosis, preventive maintenance, research, and vehicle development.[45]

111. Honda therefore possessed information unavailable to ordinary consumers concerning both individual camera failures and broader patterns across its nationwide vehicle population.

**b. <u>Honda Knew or Should Have Known of the Defect Through NHTSA Complaints</u>**

112. Publicly available consumer complaints provided additional notice and corroborated the internal repair, warranty, and diagnostic information available to Honda.

113. The consumer complaints described below are publicly available through the National Highway Traffic Safety Administration's searchable database at https://www.nhtsa.gov/?nhtsaId=. Each complaint may be located by entering the corresponding ODI number identified below into NHTSA's database or by appending that ODI number to the end of the foregoing URL.

---

[44] American Honda Motor Co., Inc., *2018 Clarity Plug-In Hybrid Owner's Manual*, *supra* note 6, at unnumbered introductory page 2. The manual states that service-related devices record information to assist technicians and that some diagnostic and maintenance information is uploaded to Honda when the vehicle starts.

[45] *Id.* at unnumbered introductory page 4. Honda states that the vehicle transmits warning indicators and messages for technical diagnosis, preventive maintenance, research, and vehicle development.

114. Pursuant to the TREAD Act, Honda has an obligation to actively monitor and evaluate safety data submitted to NHTSA, including consumer complaints, Early Warning Reports, and Defect investigations.

115. Numerous consumer complaints documenting the Defect were submitted to NHTSA prior to production or during the production of many of the Class Vehicles exhibiting the Defect:

- On November 19, 2018, the owner or lessee of a 2018 Honda CR-V submitted a complaint to NHTSA, assigned ODI No. 11152426. The owner reported that warnings concerning the adaptive cruise control, collision-mitigation system, and brake system repeatedly appeared while driving and produced continuous audible alerts. The owner further reported that the dealer replaced the windshield-mounted camera unit, which appeared to resolve the problem.
- On June 7, 2022, the owner or lessee of a 2022 Honda CR-V submitted a complaint to NHTSA, assigned ODI No. 11468019. The owner reported intermittent Collision Mitigation Braking System warnings and rapidly flashing instrument-panel alerts. According to the complaint, the dealer identified a problem with the vehicle's radar/camera system and ordered replacement parts. The owner also reported possessing photographs and video documenting the warnings.
- On September 29, 2022, the owner or lessee of a 2022 Honda CR-V submitted a complaint to NHTSA, assigned ODI No. 11487124. The owner reported that the lane-departure system malfunctioned during hot weather, producing persistent warnings and audible alerts until the vehicle's interior cooled. According to the complaint, the dealer diagnosed the problem as requiring replacement of the front-camera system, but the necessary parts were backordered. The vehicle had approximately 1,850 miles at the time of the reported failure, and the manufacturer was notified.
- On February 27, 2023, the owner or lessee of a 2018 Honda Odyssey submitted a complaint to NHTSA, assigned ODI No. 11509317. The owner reported that the vehicle's monocular camera suddenly failed while the vehicle was traveling on a major highway, disabling the adaptive cruise control, automatic braking, forward-collision warning, lane-departure warning, lane-keeping assistance, and automatic high beams. According to the complaint, a Honda dealer confirmed the camera failure and replaced Honda part number 36160-THR-A04 at the owner's expense for $1,335.88. The owner retained the failed component, and American Honda declined

warranty coverage.

- On June 27, 2023, the owner or lessee of a 2023 Honda CR-V submitted a complaint to NHTSA, assigned ODI No. 11529154. The owner reported that the vehicle braked unexpectedly despite the absence of another vehicle or obstacle, after which warnings appeared for the adaptive cruise control, lane-keeping assistance, collision-mitigation braking, road-departure mitigation, and brake systems. According to the complaint, the dealer determined that these safety systems were inoperative because the camera had failed. The vehicle had approximately 1,600 miles, and the replacement camera was expected to take six weeks to arrive.
- On July 14, 2023, the owner or lessee of a 2019 Honda Pilot submitted a complaint to NHTSA, assigned ODI No. 11532369. The owner reported warnings involving the adaptive cruise control, lane-keeping assistance, automatic high beams, collision-mitigation system, and road-departure mitigation system, leaving those safety functions inoperative. According to the complaint, the dealer diagnosed an internal failure of the multipurpose camera when the vehicle had approximately 32,000 miles. The estimated cost to replace the camera was approximately $1,800 to $2,000.
- On July 20, 2023, the owner or lessee of a 2020 Honda Odyssey submitted a complaint to NHTSA, assigned ODI No. 11533479, under the components "FORWARD COLLISION AVOIDANCE, LANE DEPARTURE," stating: "The following errors suddenly appeared one-at-a-time, causing all the advanced driver assistance capabilities to stop working, including regular cruise control: * ACC - Adaptive Cruise Control Problem * LKAS - Lane Keeping Assist Problem * Collision Mitigation System Problem * Road Departure Mitigation System Problem * Auto High-Beam Problem * Brake System light also appeared. Battery replacement did not fix issue. Errors usually appear within about 30-60 seconds of turning the car on, but errors occasionally go in and out intermittently. Lights come on with a distracting beep one-at-a-time, causing major distractions while driving and suddenly disabling any active cruise and/or LKAS features while driving in traffic. Dealer stated the windshield mounted LKAS camera needs to be replaced for $1592 + tax." The same owner additionally stated that "[s]afety features should not be flaky, and customers should not bear the cost of repairing safety equipment such as this. This should be strongly considered for a recall."
- On July 20, 2023, the owner or lessee of a 2019 Honda Pilot submitted a complaint to NHTSA, assigned ODI No. 11533519. The owner reported sudden warnings involving the collision-mitigation system, road-departure mitigation system, automatic high beams, adaptive cruise control, lane-keeping assistance, and brake system, rendering those Honda Sensing

features and cruise control unavailable. According to the complaint, a Honda dealer determined that the camera behind the rearview mirror had failed and quoted more than $1,800 to repair the vehicle.

- On August 4, 2023, an owner or lessee of a 2018 Honda Civic submitted a complaint to NHTSA, assigned ODI No. 11536602, under the components "FORWARD COLLISION AVOIDANCE, LANE DEPARTURE," stating: "I got the car with Honda Sensing to include adaptive cruise control, lane departure warning, and forward collision warning. All these systems stopped working within 36 month and under 36000 miles. Honda dealership wants more than $2500 for a fix that I read on the internet does not seems to solve the problem. Many people report that the problem is either not solved or it recurs within 6 months."
- On August 26, 2023, the owner or lessee of a 2019 Honda Odyssey submitted a complaint to NHTSA, assigned ODI No. 11540869, under the components "FORWARD COLLISION AVOIDANCE, LANE DEPARTURE," stating: "The front camera is malfunctioning creating the following warnings and preventing safety systems from working properly: 1. Lane Keeping Assist Problem 2. Collision Mitigation System Problem 3. Road Departure Mitigation System Problem 4. Auto High-Beam Problem 5. Adaptive Cruise Control Problem In addition, the 'Brake Systems' light is on. This issue not only prevents safety features from functioning, but may mask other issues since the 'Brake systems' light remains on at all times. The vehicle has recently undergone the recall repair work for the MOST FAKRA Service Cables. No other mechanical issues were detected by the Honda dealership or an independent Honda certified mechanic."
- On January 29, 2024, the owner or lessee of a 2018 Honda Odyssey submitted a complaint to NHTSA, assigned ODI No. 11568560, under the components "VEHICLE SPEED CONTROL, SERVICE BRAKES, FORWARD COLLISION AVOIDANCE." The owner described the failure as affecting personal safety, stating: "Warning messages for the following appeared: brake system lane keeping/assist system collision mitigation system problem road departure mitigation system problem auto-high beam problem adaptive cruise control problem None of these safety features now work. Our local dealership told us it was a failure of the multipurpose camera unit. The fix we are told is a $1400 part. The rear camera was just recalled by Honda and repaired within the last month. This failure should not have happened and greatly impacts the safety of the car and it is a common problem when searching Honda message boards."
- On April 26, 2024, the owner or lessee of another 2018 Honda Odyssey submitted a complaint to NHTSA, assigned ODI No. 11585371, stating: "The contact owns a 2018 Honda Odyssey. The contact stated that upon start

of the vehicle, the Adaptive Cruise Control, Lane Keep Assist, Collision Mitigation System, Road Departure Mitigation system, and Auto High Beam system warning lights were illuminated. The contact stated that multiple failures occurred soon after the windshield was replaced by an independent mechanic. The dealer was notified of the failure and informed the contact that the front camera needed to be recalibrated to repair the vehicle. The vehicle was taken back to the independent mechanic where the front camera was recalibrated five times; however, the failure persisted. The manufacturer was not notified of the failure. The vehicle was not repaired. The failure mileage was approximately 70,000."

- Finally, on July 14, 2024, the owner or lessee of a 2021 Honda Pilot submitted a complaint to NHTSA, assigned ODI No. 11602010, reporting similar issues: "ACC, LKAS, collision mitigation system problem, road departure mitigation system, and auto high beam problem warnings all appear on instrument panel. None of these systems work. Have replaced battery and problem not fixed. Warnings continue to appear each time car is turned on. Vehicle has 47783 miles on it. Codes indicate there's a problem with the camera in the front of the car. The car is only 3 years old. Shouldn't be having these issues. Have researched online and found many other complaints from others from various Honda models. Major safety problem that warrants a recall."

116. Given that these reports were publicly available and accessible through NHTSA's database, Honda knew or reasonably should have known that the Defect was recurring and posed an ongoing safety risk. Despite this knowledge, Honda continued manufacturing and distributing vehicles equipped with the same defective component without implementing an adequate repair, redesign, or consumer warning. This failure to act on known safety data constitutes a breach of Honda's duty to identify, correct, and disclose known defects before placing affected vehicles into the stream of commerce.

117. Despite this knowledge, Defendant failed to disclose the Defect to consumers at or before the point of sale, and failed to issue an appropriate recall, extended warranty, or repair program.

118. Instead, Defendant continued to market the Class Vehicles as safe, reliable, and of high quality, while omitting the existence, scope, and risks of the Defect.

119. Defendant's omissions and partial representations were misleading because, in light of their knowledge of the Defect, the marketing and warranty representations created a false impression that the Class Vehicles were free of material defects affecting safety and value.

120. Despite its superior knowledge, Honda continued to market the Class Vehicles and Honda Sensing® as offering advanced and dependable standard safety functionality.

121. Honda failed to disclose that the Front Sensor Camera was susceptible to premature malfunction during ordinary operation.

122. Honda also failed to disclose that failure of the camera could simultaneously disable multiple separately advertised driver-assistance functions and require substantial expenditures for diagnosis, replacement, programming, aiming, and calibration.

123. Rather than notify owners and provide an effective class-wide remedy, Honda shifted the cost of restoring those standard safety functions to consumers.

124. Honda's omissions were material. A reasonable consumer would consider it important that a latent defect affecting one shared sensing component could disable multiple standard driver-assistance safety systems and result in hundreds or thousands of dollars in repair costs.

125. Honda had a duty to disclose the Defect because Honda possessed exclusive and superior knowledge of material facts unavailable to consumers and made partial representations concerning the safety, reliability, functionality, and value of Honda Sensing® without disclosing facts necessary to make those representations complete and not misleading.

126. The Defect was not discoverable through ordinary pre-purchase inspection. The camera and associated electronic components are not readily inspectable by consumers, and the Defect ordinarily manifests only after the vehicle has been placed into service.

127. Had Honda disclosed the Defect, Plaintiffs and reasonable consumers would not have purchased or leased the Class Vehicles or would have paid substantially less for them.

**F. <u>Plaintiffs' Experiences</u>**

**Lena Dubrovsky-Fishman**

128. Plaintiff Lena Dubrovsky-Fishman owns a 2021 Honda Pilot that was bought on March 27, 2024, at Poway Honda in Poway, CA. Before purchasing, Plaintiff relied upon Defendant's representations of the vehicle. The Honda dealership omitted any mention of defective safety systems or safety systems susceptible to failure. While driving, Plaintiff Fishman suddenly saw multiple emergency warning lights activated across the dashboard including collision mitigation and related safety system alerts that continued to alternate on the dashboard. She had lost all access to certain safety systems. The mileage at the time of the failure was approximately 59,817 miles.

129. Recognizing that what she experienced was a malfunction of safety systems, Plaintiff Fishman brought her vehicle in for a diagnostic evaluation and was informed that the forward-facing camera required full replacement in order to clear the warnings and restore functionality. She was told by the dealership that the repair would be $4,000-$5,000.

130. Plaintiff Fishman was dissatisfied with the quoted price. She therefore returned to the dealership from which she originally purchased the vehicle, Poway Honda. Personnel at Poway Honda expressed sympathy for Plaintiff's situation and informed her that the issue she was experiencing was a known problem, further acknowledging that it was unfair that Honda did not cover

the repair. Although the dealership offered Plaintiff a discounted repair price, the quoted amount remained substantially higher than what Plaintiff believed she should be required to pay for a Defect of this nature. A representative of Poway Honda further offered to contact Honda's corporate office to request "goodwill" assistance on Plaintiff's behalf. While the representative stated that such a request was submitted to Honda Corporate, he declined to provide Plaintiff with a copy of, or otherwise disclose, the contents of the communication sent to Honda.

131. Honda Corporate subsequently responded to the dealership's request and offered limited "goodwill" assistance toward the repair. As a result of this goodwill adjustment, the total repair cost was reduced to approximately half of the amount that Poway Honda had initially been willing to offer without corporate assistance. Despite this reduction, Plaintiff Fishman was still required to pay approximately $1,500 out of pocket to repair the defect. The mileage at the time of the repair was approximately 61,132.

132. Had Plaintiff Fishman known of the Defect at the time of purchase, she would not have purchased the vehicle or would have paid significantly less. As a result of Defendant's conduct, Plaintiff Fishman has suffered damages, including but not limited to overpayment, out-of-pocket repair and diagnostic costs, loss of use, and diminished value of the vehicle.

**Jesse Link**

133. Plaintiff Jesse Link purchased a new 2019 Honda Odyssey from Scott Robinson Honda, an authorized Honda dealer in Torrance, California, on March 22, 2019. In October of 2026, Plaintiff Link observed repeated notifications on his vehicle's dashboard indicating that the Collision Mitigation Braking System ("CMBS"), Road Departure Mitigation ("RDM"), Adaptive Cruise Control ("ACC"), and Lane Keeping Assist System ("LKAS") were unavailable. These safety features were disabled.

134. On October 15, 2026, Plaintiff Link brought his vehicle to Scott

Robinson Honda with an odometer reading of 54,891 miles. After confirming the various notifications displayed on the dashboard, the dealer recommended replacement of the multipurpose camera and calibration of the replacement camera. Plaintiff Link received a minor discount toward the repair through Honda's goodwill program but nevertheless paid $1,368.28 out of pocket for the repair.

135. Had Plaintiff Link known of the Defect at the time of purchase, he would not have purchased the vehicle or, in any event, would have paid significantly less. As a result of Defendant's conduct, Plaintiff Link has suffered damages, including but not limited to overpayment for his purchase, out-of-pocket repair and diagnostic costs, loss of use, and diminished value of the vehicle.

**Weihsuan Lai**

136. Plaintiff Weihsuan Lai leased a new 2019 Honda HR-V EX-L on May 7, 2019, from Honda San Francisco and later purchased this vehicle off her lease on April 13, 2022, pursuant to a separate purchase agreement with the odometer reading 7,231 miles.

137. Following the acquisition, Plaintiff Lai relocated to the East Bay area and has since serviced the vehicle at Honda Berkeley, an authorized Honda dealership.

138. On or about May 22, 2026, while Plaintiff Lai was operating the Vehicle to transport a minor child to school, multiple warning indicators and safety-related system lights unexpectedly illuminated while the vehicle was in motion. Plaintiff immediately returned home and inspected her vehicle due to safety concerns. The odometer at this time read approximately 92,000 miles.

139. The following day the vehicle was brought to Honda Berkeley for diagnosis and repair. Plaintiff Lai was informed by dealership personnel that the issue was caused by a camera component that had allegedly "fallen off." Plaintiff paid out of pocket $2,368.75 for her repairs.

140. After completion of repairs, Plaintiff Lai requested the removed component and the diagnostic trouble code printout. Both were provided. The invoice, reflecting the diagnostic report, reports an "internal electronic failure," which appears inconsistent with the explanation that the issue was solely due to a detached camera component.

141. Based on this inconsistency, Plaintiff Lai is informed and believes that her vehicle may have experienced an underlying electronic or system-level malfunction affecting safety-related components.

142. Had Plaintiff Lai known of the Defect at the time of lease and purchase, she would not have leased/purchased the vehicle or, in any event, would have paid significantly less. As a result of Defendant's conduct, Plaintiff has suffered damages, including but not limited to overpayment for her lease and subsequent purchase, out-of-pocket repair and diagnostic costs, loss of use, and diminished value of the vehicle.

**Keyana Jones**

143. Plaintiff Keyana Jones purchased her 2025 Civic Hybrid Sport Touring from Dick Hannah Honda in Vancouver, WA on July 10, 2025. Before purchasing, Plaintiff relied upon Defendant's representations concerning the vehicle. The dealership omitted any mention of defective safety systems. In September of 2025, with the odometer reading approximately 1,000 miles, Plaintiff Jones started seeing the same notifications as described above appear on the dashboard. Since then, she has lost access to those safety features.

144. Had Plaintiff Jones known of the Defect at the time of purchase, she would not have purchased the Class Vehicle or, in any event, would have paid significantly less. As a result of Defendant's conduct, Plaintiff has suffered damages, including but not limited to overpayment, diagnostic costs, loss of use, and diminished value of the vehicle.

**Benjamin Demarest**

145. Plaintiff Demarest owns a 2020 Honda Clarity, which was purchased new from a Honda dealership on December 26, 2020

146. On July 21, 2025, at approximately 70,000 miles, the vehicle began displaying multiple dashboard warning messages, including failures involving the Brake Hold System, Collision Mitigation System, and Adaptive Cruise Control. These warning messages persisted after they first appeared.

147. After experiencing the warnings, Plaintiff conducted independent research and concluded that the failures appeared to be related to the vehicle's Front Sensor Camera. Based on that research and reports from other Honda owners experiencing similar issues, Plaintiff believed the Front Sensor Camera system was defective and estimated that the repair would cost approximately $1,500. Believing Honda should be responsible for repairing the defect, Plaintiff initially declined to pay for the repair out of pocket.

148. Plaintiff subsequently sought assistance through Honda's Goodwill program. Honda denied the request, citing the vehicle's high mileage and lack of service history. Plaintiff is unaware of any preventative maintenance recommended by Honda for the front camera sensor and does not believe the vehicle's mileage should affect the failure of that component. Plaintiff further states that the vehicle was maintained substantially in accordance with Honda's recommended maintenance schedule, primarily through Honda dealerships, as reflected in the available service records.

149. After Honda denied Goodwill assistance, Plaintiff paid $2,786.26 to have the Front Sensor Camera repaired at a Honda dealership when the vehicle had 85,425 miles.

150. Had Plaintiff Demarest known of the Defect at the time of purchase, he would not have purchased the Class Vehicle or, in any event, would have paid significantly less. As a result of Defendant's conduct, Plaintiff has suffered

damages, including but not limited to overpayment, diagnostic costs, loss of use, and diminished value of the vehicle.

**Olga Good**

151. Plaintiff Olga Good purchased a new 2022 Honda Pilot from Criswell Honda, an authorized Honda dealer in Maryland, on April 13, 2022. On October 1, 2026, when her vehicle had just over 34,000 miles, Plaintiff Good began observing repeated notifications on her vehicle's dashboard indicating that the CMBS, RDM, ACC, and LKAS were unavailable. These safety features were disabled.

152. On October 14, 2026, Plaintiff Good brought her vehicle to Criswell Honda. The dealer diagnosed an internal failure of the multipurpose camera and recommended replacement and installation of a new camera which would cost approximately $2,600. In addition, Plaintiff Good was charged nearly $500 in connection with the diagnostic visit.

153. Plaintiff Good initially declined the repair because of the cost. After contacting American Honda and discussing the matter with Criswell Honda, Plaintiff Good was informed that she would be responsible for $1,000 of the $2600 toward the repair, plus another $150 for camera alignment. Given the loss of safety features and the lack of other options, Plaintiff Good intends to proceed with the repair.

154. Had Plaintiff Good known of the Defect at the time of purchase, she would not have purchased the vehicle or, in any event, would have paid significantly less. As a result of Defendant's conduct, Plaintiff Good has suffered damages, including but not limited to overpayment for her purchase, out of pocket losses for diagnostic charges and for the repair.

**Marianne Gonzales**

155. Plaintiff Marianne Gonzales is a Florida resident who co-owns a 2019 Honda Pilot with her husband, James Gonzales. On March 3, 2025, when the

vehicle had approximately 65,640 miles, Plaintiff Gonzales noticed that several warning lights illuminated simultaneously and remained on. The issue appeared to involve the vehicle's Front Sensor Camera and sensing system.

156. On June 7, 2025, at approximately 68,894 miles, the vehicle was brought to Winter Haven Honda for diagnosis based on their suspicion that the Front Sensor Camera had failed. The diagnostic report confirmed an internal failure of the multipurpose camera unit and recommended replacement of the unit. Honda corporate, however, denied coverage of the replacement costs, and the camera has not been replaced.

157. Had Plaintiff Gonzales known of the Defect at the time of purchase, she would not have purchased the Class Vehicle or, in any event, would have paid significantly less. As a result of Defendant's conduct, Plaintiff has suffered damages, including but not limited to overpayment, diagnostic costs, loss of use, and diminished value of the vehicle.

**Omar Awan**

158. Plaintiff Omar Awan entered into a contract to purchase a used 2019 Honda Odyssey in Petersburg, Virginia on October 14, 2020, with an odometer reading of 6,128 miles and subsequently took possession of the vehicle in Maryland. Before purchasing his vehicle, Plaintiff relied upon Defendant's representations. The dealership omitted any mention of defective safety systems and therefore concealed the Defect. Plaintiff Awan experienced the Defect. Specifically, the vehicle's forward-facing camera failed, triggering multiple warning indicators, including alerts relating to the braking system, adaptive cruise control, and headlights, all of which flashed intermittently. These indications as shown above illustrate failure of these systems.

159. On March 19, 2026, Plaintiff Awan presented the vehicle to an authorized Honda dealership in Fredericksburg, VA, where the issue was formally diagnosed at approximately 98,807 miles. Plaintiff paid $195 out-of-pocket for this

diagnostic service, and the dealership advised that replacement of the Front Sensor Camera was required.

160. Had Plaintiff Awan known of the Defect at the time of purchase, he would not have purchased his class vehicle or would have paid significantly less. As a result of Defendant's conduct, Plaintiff has suffered damages, including but not limited to overpayment at purchase, diagnostic costs, loss of use, and diminished value of the vehicle.

**Beverly Mason**

161. In approximately 2019, Plaintiff Mason purchased a new 2018 Honda Clarity Plug-In Hybrid (the "Vehicle") for personal, family, and household use, and not for resale. Plaintiff Mason has owned the Vehicle continuously since its purchase. In purchasing the Vehicle, Plaintiff Mason reasonably expected and believed that it was free from material defects and would provide the safety, reliability, quality, and performance that Honda represented and that a reasonable consumer would expect throughout the Vehicle's ordinary useful life.

162. Beginning in or around December 2025, the Defect manifested in Plaintiff Mason's Vehicle through numerous warning messages concerning multiple Honda Sensing® functions. These warnings reflected the malfunction of systems that Plaintiff Mason reasonably expected to remain operational and reliable during the Vehicle's ordinary useful life.

163. As a direct and proximate result of the Defect, Plaintiff Mason was required to seek diagnosis and repair of her Vehicle and incurred approximately $2,933 in out-of-pocket expenses. Had Honda disclosed the Defect before Plaintiff Mason purchased the Vehicle, Plaintiff Mason would not have purchased the Vehicle, would have paid less for it, or would have required Honda to provide an adequate remedy for the Defect.

164. Had Plaintiff Mason known of the Defect at the time of purchase, she would not have purchased the Class Vehicle or, in any event, would have paid

significantly less. As a result of Defendant's conduct, Plaintiff Mason has suffered damages, including but not limited to overpayment, diagnostic costs, loss of use, and diminished value of the vehicle.

**Jonah Morningstar**

165. Plaintiff Morningstar purchased a preowned 2019 Honda Clarity with 59,939 miles on the odometer from a Mercedes Benz dealership in Medford, Oregon on April 11, 2024. Before purchasing, the dealership omitted any mention of defective safety systems. Plaintiff Morningstar experienced the same Defect at issue in this action; specifically, the vehicle's forward-facing camera failed, triggering multiple warning indicators, including alerts relating to the braking system, adaptive cruise control, and headlights, all of which flashed intermittently. These indications as shown above illustrate failure of these systems. Morningstar began to experience these system failures on March 20, 2026, with the odometer reading approximately 85,000 miles.

166. Plaintiff Morningstar initially conducted his own independent research by contacting three Honda dealers in his area and determined that the Front Sensor Camera itself would cost approximately $1,500, and installation and calibration would cost another $500 to $800. After spending further time and research, Plaintiff Morningstar was able to obtain a Front Sensor Camera online for $1033.25 with shipping and $280 to have the camera calibrated.

167. Had Plaintiff Morningstar known of the Defect at the time of purchase, he would not have purchased the Class Vehicle or would have paid significantly less. As a result of Defendant's conduct, Plaintiff has suffered damages, including, but not limited to, overpayment, diagnostic costs, loss of use, and diminished value of the vehicle.

## **CLASS ACTION ALLEGATIONS**

168. Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2). and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the

following proposed Class and Subclasses:

**Nationwide Class**

All residents of the United States who purchased or leased a Class Vehicle.

**Virginia Subclass**

All persons who purchased or leased a Class Vehicle in the Commonwealth of Virginia.

**Maryland Subclass**

All persons who purchased or leased a Class Vehicle in the state of Maryland.

**California Subclass**

All persons who purchased or leased a Class Vehicle in the state of California.

**Oregon Subclass**

All persons who purchased or leased a Class Vehicle in the state of Oregon.

**Washington Subclass**

All persons who purchased or leased a Class Vehicle in the state of Washington.

**Florida Subclass**

All persons who purchased or leased a Class Vehicle in the state of Florida.

169. The Nationwide Class and State Subclasses are collectively referred to as the "Class," except where otherwise indicated.

170. Excluded from the Class are Defendant; Defendant's parents, subsidiaries, affiliates, successors, assigns, officers, directors, and employees; any entity in which Defendant has a controlling interest; the judicial officers assigned to this action and their immediate family members; and Court personnel.

171. The members of the Class are so numerous that joinder of all members is impracticable. Honda sold and leased thousands of Class Vehicles throughout the United States. The precise number of Class members is unknown to Plaintiffs but is readily ascertainable from Honda's records, dealership records, vehicle

registration data, warranty information, and other records maintained by Honda or its agents.

172. This action presents numerous questions of law and fact common to the Class that are capable of class-wide resolution. Those common questions include, among others:

a. whether the Class Vehicles contain the Defect;

b. whether the Defect existed at the time the Class Vehicles left Honda's control;

c. whether the Defect presents a safety issue or safety risk;

d. whether Honda knew or should have known of the Defect before selling the Class Vehicles;

e. whether Honda concealed or failed to disclose the Defect;

f. whether Honda breached express and implied warranties;

g. whether Plaintiffs and Class members suffered economic injury;

h. the proper measure of damages and restitution; and

i. whether injunctive or declaratory relief is appropriate.

173. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased or leased Class Vehicles containing the same alleged Defect, were exposed to substantially similar representations and omissions, experienced the same Defect, incurred repair expenses, and suffered the same type of economic injury as other Class members.

174. Plaintiffs will fairly and adequately protect the interests of the proposed Class. Plaintiffs have no interests antagonistic to those of absent Class members and have retained counsel experienced in complex consumer, automotive defect, and class action litigation.

175. Common questions of law and fact predominate over any individual issues because Honda's liability arises from standardized conduct applicable to all Class members, including the design of the Class Vehicles, Honda's uniform

marketing of Honda Sensing®, its alleged concealment of the Defect, and its uniform warranty and post-sale practices.

176. A class action is superior to individual actions because the damages suffered by many Class members are insufficient to justify separate lawsuits, and class treatment will promote efficiency, avoid inconsistent adjudications, and provide a practical means of resolving the common issues presented by Honda's alleged conduct.

## TOLLING OF STATUTES OF LIMITATIONS

177. *Discovery Rule*. Plaintiffs' claims accrued upon discovery that the Front Sensor Camera system that Honda designed, manufactured, and installed in the Class Vehicles suffered from the Defect and that the resulting failures were attributable to that latent condition. Although Honda knew of and omitted the Defect, Plaintiffs and Class Members could not and did not discover these facts through reasonably diligent investigation until after they experienced Front Sensor Camera failures and reasonably excluded other potential causes.

178. *Active Concealment Tolling*. Any statutes of limitations are tolled by Honda's knowing and active concealment of the Defect. Honda kept Plaintiffs and all Class Members ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on the part of Plaintiffs. The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and the Class Members. Plaintiffs could not reasonably have discovered the Front Sensor Camera defect.

179. *Estoppel*. Honda was and is under a continuous duty to disclose to Plaintiffs, as well as Class Members, the true character, quality, and nature of the Class Vehicles' Honda Sensing® system. At all relevant times, and continuing to this day, Honda knowingly, affirmatively, and actively misrepresents and omits the true character, quality, and nature of the Class Vehicles' Front Sensor Camera

system. The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class Members. Plaintiffs and Class Members reasonably relied upon Honda's knowing and/or active omissions. Based on the foregoing, Honda is estopped from relying upon any statutes of limitation in defense of this action.

180. *Equitable Tolling*. Honda took active steps to omit the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased the Class Vehicles with the Defect. The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of the Plaintiffs and Class Members. When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Honda wrongfully omitted its deceitful acts described above. Should it be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## COUNT I

### Common Law Fraud/Fraud By Omission
### (On Behalf of Plaintiffs and the Nationwide Class and, alternatively, on behalf of the State Subclasses)

181. Plaintiffs repeat and reallege the allegations in paragraphs 1–180 as though fully set forth herein.

182. Honda concealed and omitted material facts concerning the Defect before and after Plaintiffs and Class Members purchased or leased the Vehicles.

183. Honda had exclusive and superior knowledge concerning the Defect that was not reasonably available to Plaintiffs or Class Members. Among other things, Honda possessed information obtained through engineering validation, supplier communications, durability testing, warranty claims, dealership repair records, technical assistance requests, replacement-part data, customer complaints,

post-sale field performance monitoring, and other internal sources unavailable to consumers.

184. Honda also possessed exclusive knowledge because it designed the Honda Sensing® system, authored the technical documentation governing operation of the Front Sensor Camera, established the inspection and calibration procedures applicable to that camera, and maintained centralized warranty and repair information concerning recurring failures affecting the Vehicles.

185. Honda also knew or should have known of the Defect because it is deemed to have knowledge of the consumer complaints by owners or lessees of the Class Vehicles describing the Defect on the NHTSA website.

186. The Defect is material because it affects numerous safety-related technologies Honda expressly marketed as significant features of the Vehicles, including CMBS, ACC, LKAS, RDM, Traffic Sign Recognition, and related Honda Sensing® functions. A reasonable consumer would consider it important that malfunction of a single concealed component could simultaneously disable multiple advertised safety systems and require substantial out-of-pocket repair expenses.

187. Honda had a duty to disclose the Defect because, among other reasons:

a. Honda possessed exclusive knowledge of material facts not known or reasonably available to consumers;
b. Honda actively concealed the existence and nature of the Defect;
c. Honda made partial representations concerning the safety, reliability, durability, and functionality of Honda Sensing® while omitting facts necessary to render those representations complete and not misleading;
d. Honda knew the omitted facts materially affected the safety, value, and utility of the Vehicles; and

e. Honda possessed superior access to information unavailable to Plaintiffs and Class Members.

188. Honda represented that Honda Sensing® would assist drivers in recognizing roadway hazards, avoiding collisions, maintaining lane position, and improving overall driving safety. Honda omitted that the Front Sensor Camera was susceptible to premature internal malfunction and that failure of that component could simultaneously disable multiple integrated driver-assistance systems.

189. Plaintiffs and reasonable consumers could not have discovered the Defect through ordinary diligence before purchasing or leasing the Vehicles because the defect is latent and ordinarily manifests only after the vehicles have been placed into service.

190. Plaintiffs reasonably relied upon Honda’s omissions and partial representations when deciding to purchase or lease their Vehicles. Had Honda disclosed the Defect before sale, Plaintiffs would not have purchased or leased their Vehicles or would have paid substantially less for them.

191. Honda intended that consumers rely upon its omissions and continue purchasing Vehicles without knowledge of the Defect.

192. As a direct and proximate result of Honda's fraudulent omissions and concealment, Plaintiffs and Class Members suffered damages, including overpayment for their vehicles, out-of-pocket repair expenses, diminished vehicle value, loss of the benefit of their bargain, and other damages according to proof.

193. Honda's conduct was willful, knowing, and carried out with conscious disregard for the rights of Plaintiffs and Class Members, thereby entitling Plaintiffs and the proposed Class to all available legal and equitable relief, including punitive damages where permitted by applicable law.

## COUNT II

### Breach of Express Warranty
### (On Behalf of Plaintiffs and the Nationwide Class and, alternatively, on behalf of the State Subclasses)

194. Plaintiffs repeat and reallege the allegations in paragraphs 1–180 as though fully set forth herein.

195. At all relevant times, Honda was and is a merchant, manufacturer, seller, and warrantor with respect to the Class Vehicles under applicable state law.

196. Honda issued written express warranties in connection with the sale and lease of the Class Vehicles. Among other things, Honda expressly warranted that the Class Vehicles were free from defects in materials and workmanship for the applicable warranty period and agreed to repair or replace defective components that failed during the warranty period, subject to the terms and conditions of its written warranties.

197. Honda further represented through its written warranties, owner's manuals, marketing materials, and warranty publications that the Class Vehicles, including the Honda Sensing system and its component parts, were designed and manufactured to perform safely, reliably, and in accordance with Honda's specifications under normal operating conditions.

198. These affirmations of fact, promises, descriptions, and written warranties became part of the basis of the bargain between Honda and Plaintiffs and similarly situated consumers.

199. The Defect causes the Front Sensor Camera to prematurely malfunction during ordinary operation, preventing Honda Sensing® technologies from functioning as represented.

200. Plaintiffs' vehicles exhibited symptoms of the Defect during ordinary use and without misuse, abuse, neglect, accident, or improper maintenance.

201. Plaintiffs presented their vehicles for diagnosis and repair after the Defect manifested. Honda and/or its authorized repair facilities diagnosed and/or

attempted to repair the vehicles, yet Plaintiffs nevertheless incurred out-of-pocket expenses attributable to the Defect.

202. Plaintiffs were the direct or, alternatively, the third party beneficiaries, and/or the intended third party beneficiaries of the express warranties.

203. Honda breached its express warranties by, among other things:

a. selling Class Vehicles containing the Defect;

b. failing to repair the Defect in a manner that permanently corrected the condition;

c. failing to replace defective components without charge when legally obligated to do so;

d. requiring Plaintiffs and Class members to pay for repairs associated with the Defect;

e. failing to disclose the existence of the Defect before and after sale; and

f. otherwise failing to provide the quality and performance promised under its written warranties.

204. Upon information and belief, Honda knew that the Defect was not an isolated occurrence but instead affected numerous Honda vehicles equipped with materially similar Honda Sensing architecture. Nevertheless, Honda continued to deny warranty coverage in many instances, refused to reimburse consumers for repairs, and failed to implement an adequate corrective program.

205. To the extent Honda contends that certain repairs occurred after expiration of the written warranty, Plaintiffs allege that Honda is estopped from asserting any warranty-duration defense because Honda knowingly concealed the Defect and prevented consumers from discovering it during the warranty period.

206. Honda likewise cannot rely upon warranty limitations where its own conduct prevented Plaintiffs and Class members from discovering the latent defect

until after expiration of the written warranty.

207. As a direct and proximate result of Honda's breach of its express warranties, Plaintiffs and Class members have suffered damages.

208. Plaintiffs and Class members are entitled to recover all damages available for Honda's breach of express warranty, together with prejudgment interest, costs, attorneys' fees where authorized by law, equitable relief, and such additional relief as the Court deems just and proper.

## COUNT III

**Breach of the Implied Warranty of Merchantability**
**(On Behalf of Plaintiffs and the Nationwide Class and, alternatively, on behalf of the State Subclasses)**

209. Plaintiffs repeat and reallege the allegations in paragraphs 1–180 as though fully set forth herein.

210. At all relevant times, Honda was a merchant with respect to motor vehicles, including the Class Vehicles, and was engaged in the business of designing, manufacturing, importing, distributing, marketing, selling, leasing, warranting, and servicing Honda automobiles.

211. By placing the Class Vehicles into the stream of commerce, Honda impliedly warranted that the Class Vehicles were merchantable and fit for the ordinary purposes for which such vehicles are used.

212. The implied warranty of merchantability required that the Class Vehicles, among other things:

a. pass without objection in the trade under the contract description;
b. be fit for the ordinary purpose of providing safe, reliable, and dependable transportation;
c. be adequately contained, packaged, and labeled;
d. conform to the promises and affirmations of fact appearing on their labels, marketing materials, and accompanying documentation;

and

e. perform in a manner consistent with the reasonable expectations of consumers purchasing vehicles equipped with advanced driver-assistance technologies.

213. At the time the Class Vehicles left Honda's possession and control, they were not merchantable because they contained the Defect.

214. As alleged herein, the Defect causes the Front Sensor Camera to malfunction during ordinary operation, resulting in the simultaneous loss or degradation of multiple Honda Sensing safety systems, including the Collision Mitigation Braking System, Adaptive Cruise Control, Lane Keeping Assist System, Road Departure Mitigation System, and related driver-assistance technologies.

215. A reasonable consumer purchasing a vehicle equipped with Honda Sensing expects those safety-related technologies to function reliably throughout the ordinary useful life of the vehicle and does not expect that a concealed defect affecting a common sensor will disable numerous integrated safety systems.

216. The Defect existed at the time the Class Vehicles were designed, manufactured, distributed, marketed, sold, and leased by Honda, even though the defect typically manifested only after the vehicles had been placed into ordinary service.

217. Plaintiffs' Vehicles were used in a normal, foreseeable, and intended manner. Plaintiffs properly maintained and operated their Vehicles.

218. Because of the Defect, Plaintiffs' Vehicles were not fit for their ordinary purpose of providing safe, reliable transportation with the Honda Sensing® functionality Honda represented. The vehicles could not reliably provide the level of safety, reliability, and functionality reasonably expected by consumers purchasing vehicles equipped with Honda Sensing®.

219. Plaintiffs were the direct or, alternatively, were the third party

beneficiaries, and were the intended third party beneficiaries, of the implied warranties.

220. Plaintiffs presented the vehicles for diagnosis and repair after the Defect manifested and incurred out of pocket expenses for repair and diagnosis associated with the Defect.

221. Honda has failed and refused to adequately repair, replace, or otherwise remedy the Defect and has instead shifted the financial burden of diagnosing and repairing the Defect to consumers.

222. As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiffs and Class members have suffered damages, including overpayment for the Class Vehicles, out-of-pocket repair expenses, diminished vehicle value, loss of the benefit of their bargain, and other damages according to proof.

223. Plaintiffs and Class members are entitled to recover all damages available for Honda's breach of the implied warranty of merchantability, together with prejudgment interest, costs, attorneys' fees where authorized by law, equitable relief, and such additional relief as the Court deems just and proper.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Nationwide Class, and alternatively on behalf of the State Subclasses)**

224. Plaintiffs repeat and reallege the allegations in paragraphs 1–180 as though fully set forth herein.

225. Plaintiffs plead this claim in the alternative to their warranty and contract-based claims.

226. Through the conduct alleged herein, Honda knowingly received and retained benefits to which it was not entitled.

227. Plaintiffs and Class members conferred direct and indirect monetary benefits upon Honda by purchasing or leasing the Class Vehicles and by paying

for repairs, replacement parts, diagnostic procedures, calibration services, and other expenses associated with the Defect.

228. Honda knowingly accepted and retained these benefits while concealing the existence of the Defect and continuing to market the Class Vehicles as equipped with reliable Honda Sensing technology.

229. Honda has been unjustly enriched by retaining revenues generated through the sale, lease, servicing, and repair of vehicles affected by the Defect.

230. It would be inequitable and unjust for Honda to retain those benefits because they were obtained through the concealment of material facts and the sale of vehicles worth less than represented.

231. As a direct and proximate result of Honda's conduct, Plaintiffs and Class members have suffered economic losses, including overpayment for the Class Vehicles, repair expenses, diminished value, and loss of the benefit of their bargain.

232. Equity requires Honda to disgorge all benefits wrongfully obtained and to make restitution to Plaintiffs and the proposed Class.

233. Plaintiffs and Class members therefore seek restitution, disgorgement, equitable relief, costs, interest, and all other relief available in equity.

**COUNT V**
**Violation of California's Unfair Competition Law,**
**Cal. Bus. & Prof. Code §§ 17200 et seq.**
**(On Behalf of Plaintiffs and the Nationwide Class and, alternatively, on behalf of Plaintiffs Dubrovsky-Fishman, Lai, Link, and Demarest and the California Subclass)**

234. Plaintiffs repeat and reallege the allegations in paragraphs 1–180 as though fully set forth herein.

235. Plaintiffs bring this claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, which prohibits unlawful, unfair, and fraudulent business acts and practices and misleading advertising.

236. Honda is incorporated and headquartered in California. The challenged design, validation, nationwide marketing, warranty-administration, disclosure, and remedial decisions were directed, approved, and implemented in substantial part from Honda's Torrance, California headquarters.

237. Honda's conduct is "unlawful" because it violates the statutory and common-law duties alleged herein, including duties prohibiting fraudulent concealment and deceptive representations and duties arising under applicable warranty law.

238. Honda's conduct is "fraudulent" because it was likely to deceive reasonable consumers. Honda promoted advanced, reliable Honda Sensing® technologies while omitting that the front sensor camera could prematurely malfunction, disable multiple advertised functions, and require costly repair and calibration.

239. Honda's conduct is "unfair" because it caused substantial consumer injury that was not reasonably avoidable or outweighed by countervailing benefits. Honda shifted the Defect's costs and risks to consumers while retaining the resulting commercial benefits.

240. Honda knew or should have known of the Defect through its design, testing, validation, warranty, dealership, diagnostic, parts, customer service, and field monitoring information, monitoring NHTSA consumer complaints, yet continued its challenged marketing and failed to provide an effective remedy.

241. Honda's omissions were material. Had Honda disclosed the Defect, Plaintiffs and Class members would not have purchased the Class Vehicles or would have paid substantially less for them.

242. Plaintiffs and Class members suffered injury in fact and lost money or property as a result of Honda's unfair competition, including out-of-pocket expenses, overpayment, diminished vehicle value, and loss of the benefit of the bargain.

243. Honda's business practices are unlawful because they violate the California Consumers Legal Remedies Act, Cal. Civil Code § 1750, et seq., and the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, et seq., including the breach of implied warranty. Honda sold vehicles with a latent safety defect, making the Honda Sensing system inoperable. Honda knew or should have known of the Defect and failed to disclose this knowledge of this Defect or the substantial risks it posed to consumers, thereby depriving purchasers of the benefit of the warranties and protections guaranteed under California law.

244. Honda acquired money attributable to the sale of the Class Vehicles and to replacement parts, programming, calibration, and repairs administered through its authorized dealer network. Plaintiffs and Class members have an ownership interest in those monies.

245. Plaintiffs and Class members continue to own and operate their Vehicles and face the risk that the Defect will recur, that key safety features will again become unavailable, and that they will incur additional diagnostic and repair expenses.

246. Absent injunctive relief, Plaintiffs and Class members cannot determine whether Honda has implemented an effective remedy or safely rely on Honda's continuing representations concerning the Class Vehicles.

247. Damages alone cannot compel disclosure, an effective repair or reimbursement program, corrective representations, or prevention of future injury.

248. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and the Class seek restitution, injunctive and other equitable relief, prejudgment interest, attorneys' fees and costs under Cal. Civ. Proc. Code § 1021.5 and other applicable law, and further appropriate relief.

249. Plaintiffs' UCL cause of action is timely. California's Unfair Competition Law provides a four-year statute of limitations for claims brought under Business and Professions Code section 17200, et seq., and the California

Supreme Court has confirmed that common-law accrual doctrines—including the discovery rule and related equitable tolling principles—apply to such claims.

**COUNT VI**
**Violation of the Consumers Legal Remedies Act,**
**Cal. Civ. Code § 1750, et seq.**
**(On behalf of Plaintiffs Dubrovsky-Fishman, Lai, Link, and Demarest and the California Subclass)**

250. Plaintiffs Dubrovsky-Fishman, Lai, Link, and Demarest and the California Subclass incorporate by reference the allegations in paragraphs 1–180 as though fully set forth at length herein.

251. Plaintiffs Dubrovsky-Fishman, Lai, Link, and Demarest bring this claim on behalf of themselves and on behalf of the members of the California Subclass.

252. Honda qualifies as a "person" under Civil Code §§ 1761(c) and 1770 and has provided "goods" as defined in Civil Code §§ 1761(b) and 1770. Plaintiffs, along with members of the proposed California Subclass, are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770 and have engaged in a "transaction" as defined in Civil Code §§ 1761(e) and 1770.

253. Honda's actions and practices resulting in the sale of defective Class Vehicles violate § 1770 of the Consumers Legal Remedies Act for at least the following reasons:

**Misrepresentation of Characteristics, Uses, or Benefits**:

a. Honda represented that its vehicles possessed characteristics, uses, or benefits that they do not have. Specifically, Honda marketed the Honda Sensing system as a reliable, integrated suite of safety features. In reality, these features are unreliable, prone to total system collapse, and incapable of performing as advertised. By making these representations while knowing, or having reason to know, of the latent defects in the Honda Sensing system, Honda misled consumers into purchasing vehicles under the false belief that they were receiving

fully functional safety technology, in violation of Cal. Civ. Code § 1770(a)(5) of the Consumers Legal Remedies Act.

**Failure to Disclose Material Facts:**

b. Honda knew of the latent defect in the Front Camera sensor which made the Honda Sensing feature ineffective but failed to disclose these material facts to consumers at the point of sale or lease. As a result, consumers purchased vehicles without knowledge of a critical and material safety hazard that significantly impaired the intended benefits of the Honda Sensing system, in violation of Cal. Civ. Code § 1770(a)(7).

**Sales of Defective Vehicles:**

c. Honda intentionally designed, manufactured, and sold vehicles with a defective front camera sensor, knowing or having reason to know that it could fail and create a safety risk. The vehicles were sold to consumers despite Honda's awareness of the Defect, causing purchasers to incur costs and exposure to unsafe operating conditions, in violation of Cal. Civ. Code § 1770(a)(9).

**Unfair and Deceptive Conduct:**

d. By representing Honda Sensing as a fully functional safety system while concealing its propensity for total collapse, Honda engaged in unfair and deceptive practices that misled consumers, interfered with their ability to make informed purchasing decisions, and exposed them to safety risks that they reasonably expected the vehicle to mitigate, in violation of Cal. Civ. Code § 1770(a)(14).

254. Plaintiffs' claims under the Consumers Legal Remedies Act, Cal. Civil Code § 1750, et seq., are subject to a three-year statute of limitations pursuant to Code of Civil Procedure § 338, and to the delayed discovery rule. Plaintiffs did not discover, and could not reasonably have discovered, Defendant's CLRA-violative conduct until within the applicable limitations period, and thus this cause of action is timely under the discovery rule and applicable tolling

doctrines.

255. Because the Defect posed a material safety issue or risk, Defendant had a duty to disclose the Defect to Plaintiffs and the Class prior to their purchases or leasing of their Class Vehicles.

256. If Honda had not concealed the Defect and had adequately disclosed it, Plaintiffs, the proposed class members, and reasonable consumers would not have purchased the Class Vehicles or would have paid significantly less for them.

257. The CLRA claims commenced to run against Dubrovsky-Fishman, Lai, Link, and Demarast and California Subclass members when they discovered the Defect. Dubrovsky-Fishman, Lai, Link, and Demarast could not have discovered the Defect earlier despite reasonable diligence because of Defendant's knowing concealment and/or intentional omissions and other conduct as described in this complaint.

258. On June 5, 2026, Plaintiffs Dubrovsky-Fishman and Lai sent Defendant a pre-suit notice notifying Defendant of the violations of the CLRA pursuant to Cal. Civ. Code § 1782, requesting compensatory damages for Plaintiffs and the California Subclass. Defendant has refused to provide the relief requested therein within thirty (30) days from receipt and, as a result thereof, Plaintiffs Dubrovsky-Fishman and Lai seek compensatory damages under the CLRA.

## COUNT VII
## Violation of Song-Beverly Consumer Warranty Act for Breach of Implied Warranty, Cal. Civ. Code § 1790, et seq.
## (On behalf of Plaintiffs Dubrovsky-Fishman, Lai, Link, Demarest and the California Subclass)

259. Plaintiffs Dubrovsky-Fishman, Lai, Link, and Demarest and the California Subclass incorporate by reference the allegations in paragraphs 1–180 as though fully set forth at length herein.

260. Plaintiffs Dubrovsky-Fishman, Lai, Link, and Demarest bring this

claim on behalf of themselves and on behalf of the members of the California Subclass.

261. The Class Vehicles constitute "consumer goods," and Plaintiffs and the proposed California Subclass are "buyers" as defined in Cal. Civ. Code § 1791. Honda qualifies as a "manufacturer," "distributor," and "retail seller" under Cal. Civ. Code § 1791.

262. The implied warranty of merchantability accompanying the sale of each Class Vehicle guaranteed that Honda warranted each vehicle would pass without objection in the trade under the contract description, be reasonably fit for the ordinary purposes for which such vehicles are used, and conform to any promises or affirmations of fact made by Honda regarding the vehicle.

263. The Class Vehicles fail to pass without objection in the automotive trade because they contain the Defect, which makes them unfit for the ordinary purposes for which such vehicles are used. As a result, the vehicles do not conform to the promises or affirmations of fact made by Honda at the time of sale, constituting a breach of the implied warranty of merchantability under Cal. Civ. Code § 1791.

264. The Class Vehicles are not adequately labeled, as the labeling fails to disclose the Defect and does not inform members of the proposed California Subclass of the associated potential failure prior to experiencing failure firsthand.

265. Plaintiffs' claims for breach of the implied warranty of merchantability under the Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790, *et seq.*) are timely. Such claims are subject to California Uniform Commercial Code § 2725's four-year statute of limitations, which is subject to the delayed discovery rule. Plaintiffs did not discover, and could not reasonably have discovered, Defendant's breach until within the applicable limitations period.

266. Honda's actions have deprived Plaintiffs and the proposed California Subclass of the benefit of their bargains, causing the Class Vehicles to be worth

less than what they paid.

267. As a direct and proximate result of Honda's breach of implied warranty, members of the proposed California Subclass received Class Vehicles the condition of which substantially impairs their value, resulting in damages from diminished vehicle value.

268. Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs and the proposed California Subclass are entitled to damages and other legal and equitable relief, including, at their election, revocation of acceptance of the vehicles or recovery of overpayment/diminution in value, as well as incidental and consequential damages, and reasonable attorneys' fees and costs.

**COUNT VIII**
**Violation of the Washington State Consumer Protection Act**
**REV. CODE WASH. ANN. §§ 19.86.010, et seq.**
**(On behalf of Plaintiff Jones and the proposed Washington Subclass)**

269. Plaintiff Jones and the Washington Subclass incorporate by reference the allegations in paragraphs 1–180 as though fully set forth at length herein.

270. Plaintiff Jones brings this claim on behalf of herself and on behalf of the members of the Washington Subclass.

271. Defendant's conduct as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Defendant's manufacture, sale, and use of the defective camera system which Defendant failed to adequately investigate, disclose, and remedy, and its misrepresentations and omissions regarding the reliability, durability, and safety of the Class Vehicles.

272. Defendant's actions as set forth above occurred in the conduct of trade or commerce.

273. Because the Defect implicates a safety issue or safety risk, which would be material to Plaintiffs and the Class, Defendant had a duty to disclose the Defect to Plaintiffs and Class Members.

274. Defendant's actions impact the public interest because Plaintiff Jones

was affected in the same way as tens of thousands of others purchasing Defendant's Class Vehicles as a result of Defendant's course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.

275. Plaintiff Jones and the Washington Subclass overpaid for the Class Vehicles, did not receive the benefit of their bargain, and are left with Class Vehicles that have suffered a diminution in value.

276. RCW § 19.86.020 provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

277. Defendant is liable to Plaintiff Jones and the Washington Subclass members for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

**COUNT IX**
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. §§ 501.201 et seq.**
**(On behalf of Plaintiff Gonzales and the proposed Florida Subclass)**

278. Plaintiff Gonzales and the Florida Subclass incorporate by reference the allegations in paragraphs 1–180 as though fully set forth herein.

279. Plaintiff Gonzales brings this claim on behalf of herself and on behalf of the members of the Florida Subclass.

280. Defendant American Honda engaged in unfair and deceptive acts and practices in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 et seq., including Fla. Stat. § 501.204, by manufacturing, marketing, advertising, distributing, and selling Class Vehicles equipped with a defective front-facing camera and sensing system while failing to disclose the defect and its propensity to fail.

281. Honda knew or should have known that the multipurpose camera unit installed in the subject vehicle was susceptible to internal failure and that such

failure could disable or impair portions of the vehicle's Honda Sensing and driver-assistance systems. Despite this knowledge, Honda continued to market and sell the affected vehicles without adequately disclosing the existence, nature, and extent of the defect to consumers, including Plaintiff Gonzales.

282. Honda's omissions and representations were material to consumers' purchasing decisions because the proper functioning of the vehicle's front-facing camera and sensing system is an important safety-related feature of the Honda Pilot. Gonzales and other consumers were entitled to receive accurate information concerning the condition, functionality, reliability, and safety of the vehicle and its driver-assistance systems.

283. As a direct and proximate result of Honda's unfair and deceptive acts and practices, Plaintiff Gonzales suffered actual damages, including, but not limited to, the diminished value of her vehicle and the costs and expenses associated with diagnosing and remedying the defective camera system and loss of the benefit of her bargain.

284. Honda's conduct was unfair and deceptive within the meaning of Fla. Stat. § 501.204 and caused actual injury to Plaintiff Gonzales. Accordingly, Plaintiff Gonzales is entitled to all relief available under FDUTPA, including actual damages, reasonable attorney's fees and costs, and such other relief as the Court deems appropriate.

285. Defendant is liable to Plaintiff Gonzales and the Florida Subclass members for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

**COUNT X**
**Violation of the Virginia Consumer Protection Act,**
**Va. Code Ann. §§ 59.1-196 et seq.**
**(On Behalf of Plaintiffs Awan and Mason and the Virginia Subclass)**

286. Plaintiffs Awan and Mason repeat and reallege the allegations in paragraphs 1–180 as though fully set forth herein.

287. Plaintiffs Awan and Mason bring this claim individually and on behalf of the Virginia Subclass.

288. At all relevant times, Honda was a "supplier" within the meaning of the Virginia Consumer Protection Act ("VCPA"), Va. Code Ann. § 59.1-198, because it advertised, marketed, distributed, warranted, leased, sold, and serviced consumer motor vehicles, including the Class Vehicles, in Virginia.

289. Plaintiffs are "persons" who purchased a consumer good for personal, family, or household purposes within the meaning of the VCPA.

290. At all relevant times, Honda represented that the Class Vehicles were equipped with a reliable, integrated Honda Sensing system designed to enhance vehicle safety by continuously monitoring roadway conditions and assisting drivers through advanced driver-assistance technologies.

291. As alleged herein, those representations were materially misleading because Honda omitted that the Class Vehicles suffered from the Defect, which causes the front sensor camera and related components to prematurely malfunction, disabling multiple Honda Sensing functions during ordinary vehicle operation and requiring costly diagnosis, replacement, programming, and calibration.

292. Honda knew, or should have known, of the Defect before Plaintiffs purchased their Vehicles through its engineering and validation testing, warranty data, dealership repair records, technical communications, returned-parts analyses, technical publications, customer complaints, NHTSA complaints of Class Vehicle owners or lessees, and post-sale monitoring.

293. Despite possessing materially superior knowledge concerning the Defect, Honda failed to disclose it to Plaintiffs or reasonable consumers before or at the time of sale and continued to market the Class Vehicles as equipped with dependable, advanced safety technologies.

294. Honda's omissions and representations constituted deceptive acts and

practices in connection with a consumer transaction, including misrepresenting the characteristics, uses, benefits, quality, and standard of the Class Vehicles and knowingly concealing material information that reasonable consumers would consider important in deciding whether to purchase or lease the Class Vehicles, in violation of the VCPA, including Va. Code Ann. § 59.1-200(A)(5), (6), and (14).

295. Plaintiffs reasonably relied upon Honda's omissions and representations when purchasing their Vehicles. Had Honda disclosed the Defect, Plaintiffs would not have purchased their Vehicles or would have paid substantially less for them.

296. As a direct and proximate result of Honda's violations of the VCPA, Plaintiffs suffered ascertainable losses, including overpayment for their Vehicles, out-of-pocket repair expenses, diminished value of their Vehicles, loss of the benefit of the bargain, and other economic damages.

297. Pursuant to Va. Code Ann. § 59.1-204, Plaintiffs seek to recover their actual damages, together with any additional relief authorized by the VCPA, including reasonable attorneys' fees, costs, and such other relief as the Court deems just and proper.

**COUNT XI**
**Violation of the Maryland Consumer Protection Act**
**Md. Code Ann., Com. Law §§ 13-101, et seq.**
**(On behalf of Plaintiffs Awan, Good and the proposed Maryland Subclass)**

298. Plaintiffs Awan and Good and the Maryland Subclass incorporate by reference the allegations in paragraphs 1–180 as though fully set forth at length herein.

299. Plaintiff Awan and Good bring this claim on behalf of themselves and on behalf of the members of the Maryland Subclass.

300. Plaintiffs Awan and Good and the Maryland Subclass are "Consumers" as defined by the Maryland Consumer Protection Act § 13-101(c). Plaintiff Awan's purchase of his Vehicle concluded in Maryland.

301. Defendant is a "Merchant" as defined by the Maryland Consumer Protection Act § 13-101(g).

302. In connection with the sale and/or lease of the Class Vehicles, Defendant committed unfair and/or deceptive practices in violation of the Maryland Consumer Protection Act § 13-301: Unfair or Deceptive Trade Practices.

303. Plaintiffs Awan and Good and the Maryland Subclass are consumers who purchased and/or leased Class Vehicles for personal, family, or household use.

304. Defendant engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated the Maryland Consumer Protection Act § 13-301. Specifically, Defendant was aware that the Class Vehicles contained Honda Sensing systems that are unreliable, prone to total system collapse, and incapable of performing as advertised, but failed to disclose this to Plaintiffs Awan and Good and the Maryland Subclass. Defendant also marketed these vehicles as being of superior quality when the Class Vehicles contained a known defect. These affirmative misrepresentations were material to the vehicle purchases and were false statements of fact.

305. Defendant also engaged in unlawful conduct in violation of the Maryland Consumer Protection Act § 13-301 by making knowing and intentional omissions. Defendant knowingly failed to disclose the Defect in the Class Vehicles in order to secure the sale of these vehicles, and to offer them at a premium price.

306. Defendant did not fully and truthfully disclose to its customers the true nature of the Defect, which was not readily discoverable and to the extent het did it was well after Plaintiffs Awan and Good and the Maryland Subclass purchased and/or leased their Class Vehicles. As a result, Plaintiffs Awan and Good and the Maryland Subclass were fraudulently induced to purchase and/or lease the Class Vehicles with the Defect and all of the resultant problems. These facts that Defendant concealed were solely within their possession. Defendant

intended that Plaintiff Awan and Good and the Maryland Subclass rely on the acts of concealment and omissions so that they would purchase the Class Vehicles.

307. Defendant's wrongful conduct caused Plaintiffs Awan and Good and the Maryland Subclass to suffer an ascertainable loss by causing them to incur substantial expense to repair the Defect, which should have been repaired free of charge under its warranties. In addition to direct monetary losses, Plaintiff Awan and Good and the Maryland Subclass have suffered an ascertainable loss by receiving less than what was promised. Specifically, Plaintiffs Awan and Good and the Maryland Subclass have paid for a vehicle that is now worth significantly less because of the existence of the Defect and the resulting problems it causes in the Class Vehicles and because the purchase price of the Class Vehicles included a warranty program that was supposed to provide free repairs for all defects in material or workmanship that occurred during the warranty period, but instead were deprived of the value of this warranty due to Defendant's fraudulent concealment.

308. A causal relationship exists between Defendant's unlawful conduct and the ascertainable losses suffered by Plaintiffs Awan and Good and the Maryland Subclass. Had the Defect in the Class Vehicles been disclosed, Plaintiffs and the Maryland Subclass would not have purchased a Class Vehicle or taken possession of the vehicle, would have paid less for it had they decided to purchase the vehicle, or would have taken affirmative steps to prevent the resulting problems caused by the Defect by getting it fixed free-of-charge under the warranty.

**COUNT XII**
**Violation of the Oregon Unlawful Trade Practices Act**
**Or. Rev. Stat. §§ 646.605, et seq.**
**(On behalf of Plaintiff Morningstar and the proposed Oregon Subclass)**

309. Plaintiff Morningstar and the Oregon Subclass incorporate by reference the allegations in paragraphs 1–180 as though fully set forth at length herein.

310. Plaintiff Morningstar brings this claim on behalf of himself and on behalf of the members of the Oregon Subclass.

311. At all relevant times, Defendant was engaged in the advertising, marketing, distribution, and sale of motor vehicles within the State of Oregon, including vehicles equipped with the Honda Sensing safety and driver-assistance system.

312. Defendant represented, directly and indirectly, that vehicles equipped with Honda Sensing included advanced safety and driver-assistance features designed to enhance collision avoidance, improve driver awareness, and provide a heightened level of operational safety.

313. Defendant represented, directly and indirectly, that vehicles equipped with Honda Sensing included advanced safety and driver-assistance features designed to enhance collision avoidance, improve driver awareness, and provide a heightened level of operational safety.

314. These representations were material to consumers, including Plaintiff Morningstar, in deciding to purchase or lease the subject vehicle, as safety features are a significant factor in the purchase of modern vehicles.

315. Contrary to these representations, the Honda Sensing system did not function as represented and/or failed to operate in a safe, reliable, or consistent manner under normal driving conditions, thereby rendering the representations misleading and/or deceptive.

316. Defendant knew or reasonably should have known that the representations regarding the safety performance and reliability of the Honda Sensing system were false, misleading, or likely to mislead consumers.

317. Defendant's conduct constitutes unfair or deceptive acts or practices in the course of trade or commerce, in violation of ORS 646.608, including but not limited to representing that goods have characteristics, uses, or benefits they do not have, and advertising goods with intent not to sell them as advertised.

318. Plaintiff Morningstar relied on Defendant's misrepresentations and omissions in purchasing or leasing the subject vehicle equipped with the Honda Sensing system.

319. As a direct and proximate result of Defendant's unlawful trade practices, Plaintiff Morningstar has suffered damages, including but not limited to diminution in value of the vehicle, costs of repair or attempted repair, and other consequential economic losses.

320. Plaintiff Morningstar is entitled to actual damages, statutory remedies, attorney's fees, and such other and further relief as the Court deems just and proper under Oregon law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, request judgment against Defendant and that the Court grant the following:

A. An order certifying the Class pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g);

B. For an award of actual, compensatory, statutory, restitutionary, and other monetary relief allowed by law in an amount to be determined;

C. For an order awarding declaratory and injunctive relief as permitted by law;

D. For an order requiring Honda to make restitution and disgorge all benefits wrongfully obtained, as permitted by law;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. For prejudgment and/or post-judgment interest on all amounts awarded; and

G. Such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

DATED: November 6, 2026

*/s/ Tina Wolfson*

Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Deborah De Villa (SBN 312564)
*ddevilla@ahdootwolfson.com*
Yufei Wang (SBN 346170)
*ywang@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: (917) 336-0171
Facsimile: (917) 336-0177

Patrice L. Bishop (SBN 182256)
pbishop@aftlaw.com
ABRAHAM, FRUCHTER & TWERSKY
9440 Santa Monica Blvd.
Bank of America Building,
Suite 301
Beverly Hills, CA 90210
Telephone: (310) 279-5125

Howard T. Longman (admitted *pro hac vice*)
hlongman@longman.law
LONGMAN LAW, P.C.
354 Eisenhower Pkwy, Suite 2250
Livingston, New Jersey 07039
Telephone: (973) 994-2315

Gary S. Graifman (admitted *pro hac vice*)
ggraifman@kgglaw.com
KANTROWITZ,GOLDHAMER,
GRAIFMAN,PERLMUTTER&
CARBALLO, P.C.
135 Chestnut Ridge Rd., Suite 200

Montvale, New Jersey 07645
Telephone: (201) 391-7000

Stephen B. Kaplitt (admitted *pro hac vice*)
Stephen@KaplittLegal.com
KAPLITT LEGAL CONSULTING
62 N. Livingston Ave.
Livingston, New Jersey 07039
Telephone: (917) 224-6743

*Attorneys for Plaintiffs and the Proposed Class and Subclasses*

**ATTESTATION OF FILER**

Pursuant to Civ. L.R. 5-4.3.4(2)(i), the undersigned attests that all other signatories listed concur in the filing's content and have authorized the filing.

Dated: November 6, 2026 By: /s/ Tina Wolfson